**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, <br><br> v. <br><br> JOSE MEDINA-CARRASCO, AKA Josue Medina Carrasco, AKA Jose Antonio Pereida Lopez, AKA Jose Pereida-Lopez, *Defendant-Appellant*. | No. 13-10397 <br><br> D.C. No. 4:13-cr-00172-RCC-BGM-1 <br><br><br> ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, Chief District Judge, Presiding

Argued and Submitted
July 6, 2015—San Francisco, California

Filed December 2, 2015
Amended March 2, 2016

Before: Susan P. Graber and Paul J. Watford, Circuit
Judges, and Paul L. Friedman,[*] District Judge.

Opinion by Judge Graber;
Dissent by Judge Friedman

---

[*] The Honorable Paul L. Friedman, United States District Judge for the District of Columbia, sitting by designation.

**SUMMARY**[**]

**Criminal Law**

The panel dismissed a sentencing appeal based on a waiver of appellate rights in the plea agreement, which precluded a challenge to "any aspect of the defendant's sentence—including the manner in which the sentence is determined and any sentencing guideline determinations."

The panel rejected the defendant's contention that the requirement that he be sentenced "in accordance with" the plea agreement is ambiguous, and wrote that even if the phrase were susceptible to more than one interpretation, the plea colloquy eliminated any ambiguity.

The panel also rejected the defendant's contention that he was not sentenced "in accordance with" the plea agreement because the district court's "crime of violence" determination was incorrect. The panel did not reach the merits of the "crime of violence" question, explaining that because the defendant expressly waived his right to challenge sentencing guidelines determinations, a sentence "in accordance with" the plea agreement need not rest on a correct guidelines determination.

Judge Friedman dissented because he believes the appellate waiver language is ambiguous rendering it unenforceable, and because the district court plainly erred by applying the crime of violence enhancement.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Jill E. Thorpe (argued), Tucson, Arizona, for Defendant-Appellant.

Christina M. Cabanillas (argued), Assistant United States Attorney, John S. Leonardo, United States Attorney, and Robert L. Miskell, Appellate Chief, District of Arizona, Tucson, Arizona, for Plaintiff-Appellee.

**ORDER**

The opinion and dissent filed December 2, 2015, and published at 806 F.3d 1205, is amended by the opinion and dissent filed concurrently with this order, as follows:

At slip opinion page 14, 806 F.3d at 1212, replace footnote 4 of the dissent with the following:

> [4] Some critics have also suggested that appeal waivers cannot be truly voluntary when one contracting party—the government—has such a great advantage in bargaining power because the precise charge or charges to be brought and the resulting advisory Guideline sentencing range are totally up to the prosecutor. It is illusory, they say, to suggest that the defendant has any real bargaining power in this context, any free and deliberate choice.

Judges Graber and Watford have voted to deny Appellant's petition for rehearing en banc, and Judge Friedman has declined to make a recommendation.

The full court has been advised of the petition for rehearing en banc, and no judge of the court has requested a vote on it.

Appellant's petition for rehearing en banc is **DENIED**. No further petitions for rehearing or petitions for rehearing en banc shall be entertained.

---

**OPINION**

GRABER, Circuit Judge:

Defendant Jose Medina-Carrasco pleaded guilty to illegal reentry after deportation. The district court sentenced him to 55 months' imprisonment, to be followed by 3 years' supervised release. On appeal, Defendant claims that the district court erred procedurally by failing to state on the record the applicable sentencing guidelines range and erred substantively in calculating the applicable sentencing guidelines range. But Defendant's plea agreement contained a waiver of appellate rights specifically precluding a challenge to "any aspect of the defendant's sentence—including the manner in which the sentence is determined and any sentencing guideline determinations." We hold that Defendant was sentenced according to the plea agreement and that his waiver of appellate rights is valid and enforceable. Accordingly, we dismiss the appeal.

FACTUAL AND PROCEDURAL HISTORY

A federal grand jury indicted Defendant on one count of illegal reentry after deportation, in violation of 8 U.S.C. § 1326(a) as enhanced by § 1326(b)(1).  He pleaded guilty pursuant to a written "fast-track" plea agreement.  The agreement listed 18 different sentencing ranges, reached by combining three possible offense levels with six possible criminal history categories.  The agreement did not explain how the applicable offense level would be calculated, except to cite U.S.S.G. § 2L1.2 and state that "[t]he precise level of offense and number of months sentence imposed will be determined by the court based upon the defendant's criminal record."  The guidelines ranges varied widely:  The lowest range was 4 to 10 months' imprisonment, and the highest range was 70 to 87 months' imprisonment.

The plea agreement also contained a section titled "WAIVER OF DEFENSES AND APPEAL RIGHTS," which provided:

> Provided the defendant receives a sentence in accordance with this fast-track plea agreement, the defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence—including the manner in which the sentence is

determined and any sentencing guideline determinations—and includes, but not limited to, any appeals under 18 U.S.C. § 3742 (sentencing appeals), any motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c). The defendant acknowledges that this waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. If the defendant files a notice of appeal or other challenge to his/her conviction or sentence, notwithstanding this agreement, the defendant agrees that this case shall, upon motion of the government, be remanded to the district court to determine whether the defendant is in breach of this agreement and, if so, to permit the government to withdraw from the plea agreement.

At the change of plea hearing, Defendant affirmed that he signed the plea agreement after having it explained to him by his lawyer, that he understood the terms and conditions of the plea agreement, and that he agreed to be bound by those terms and conditions. During the Rule 11 colloquy, Fed. R. Crim. P. 11, the magistrate judge addressed the wide range of sentences listed in the agreement:

THE COURT: And Mr. Carrasco, you and the Government, with the help of Mr. Flores, have entered into an agreement which,

depending upon your criminal history and level of offense, states that you are agreeing that the district court judge may impose a prison sentence of between four months in prison up to 87 months in prison.

Do you understand that?

THE DEFENDANT: Yes, Judge.

THE COURT: And Mr. Carrasco, there's a broad range of sentencing possibilities under the plea agreement, and should the district court judge accept the plea agreement, the reason there's such a broad range, it'll be up to the district court judge to determine which offense level is appropriate for you.

And there are three potential offense levels, offense level 24, offense level 20, offense level 12. Then, once the district court judge determines the appropriate offense level, then the district court judge will determine your criminal history [category] based upon your criminal history, and there's different criminal history categories under each offense level that can go from criminal history category one up to criminal history category six.

Do you understand that's why there's a very broad range of sentencing possibilities under the plea agreement?

THE DEFENDANT:  Yes, Judge.

Defendant also affirmed that he understood that he was giving up his right to appeal or collaterally attack his conviction and his sentence.

The Presentence Investigation Report ("PSR") applied the modified categorical approach to conclude that Defendant's prior conviction for aggravated assault was for a "crime of violence," triggering a 16-level increase under U.S.S.G. § 2L1.2(b)(1)(A)(ii).  The PSR applied that increase to the base offense level of 8 and subtracted 3 levels for acceptance of responsibility, for a total offense level of 21.  After reviewing Defendant's criminal history, the PSR concluded that the appropriate criminal history category was IV.  The resulting range was 57 to 71 months in prison.

In his sentencing memorandum, Defendant requested a downward departure or variance, arguing that "the 16-level enhancement substantially overstates the seriousness of the conviction, and consequently subjects Mr. Medina to an unduly harsh sentence."  At the sentencing hearing, Defendant's lawyer affirmed that, other than the request for the departure or variance, he had no "objections to the probation officer's guideline recommendations and factual representations in the report."  Later, defense counsel specifically conceded, referring to Defendant's aggravated assault conviction, that "it's a crime of violence, . . . it's a level 24."

The district court sentenced Defendant to a below-guidelines 55 months of imprisonment, to be followed by 3 years of supervised release.  Defendant timely filed a notice of appeal.  Because Defendant knowingly and voluntarily

waived his right to challenge "any aspect of [his] sentence—including . . . any sentencing guideline determinations," we dismiss the appeal.

## STANDARD OF REVIEW

We review de novo the validity of an appeal waiver. *United States v. Charles*, 581 F.3d 927, 931 (9th Cir. 2009). A waiver of appellate rights "is enforceable if (1) the language of the waiver encompasses his right to appeal on the grounds raised, and (2) the waiver is knowingly and voluntarily made." *United States v. Jeronimo*, 398 F.3d 1149, 1153 (9th Cir. 2005), *overruled on other grounds by United States v. Castillo*, 496 F.3d 947, 957 (9th Cir. 2007) (en banc). To discern whether a waiver is knowing and voluntary, we must ask "what the defendant reasonably understood to be the terms of the agreement when he pleaded guilty." *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993) (footnote omitted).

## DISCUSSION

Defendant argues that the waiver is unenforceable for two related, but distinct, reasons. First, he argues that the requirement that he be sentenced "in accordance with" the plea agreement is ambiguous, such that his waiver was not knowing and voluntary. Second, he contends that he was not sentenced "in accordance with" the plea agreement because his aggravated assault conviction was not a conviction for a crime of violence.

The requirement that Defendant be sentenced "in accordance with" the plea agreement is not ambiguous. The phrase "in accordance with" requires only that the ultimate

sentence fall within the broad range authorized by the plea agreement.[1] Defendant agrees that such an interpretation is plausible, but he argues that the phrase also could be read to require that any sentence imposed rest on a correct guidelines calculation.

We cannot accept Defendant's alternate interpretation for two reasons.    First, Defendant's reading would render meaningless the express waiver of the right to challenge "any sentencing guideline determinations," contrary to basic principles of contract interpretation. *See United States v. Cope*, 527 F.3d 944, 949–50 (9th Cir. 2008) ("For the most

---

[1] Defendant asserts that the sentencing grid included in the plea agreement looks like "some esoteric algebraic algorithim." To the extent that he is arguing that the grid is so confusing that it undermined his knowing consent to the plea agreement, we cannot accept that argument. We do not dispute that the typical person unfamiliar with the intricacies of the federal sentencing guidelines would be confused by the grid at first. But, as we have explained, Defendant affirmed that his lawyer had explained the plea agreement and that Defendant understood its terms and conditions. Moreover, the magistrate judge explained in general how the grid worked, and again Defendant said that he understood. Having made those representations, Defendant cannot now claim that his waiver was not knowing and voluntary because he did not understand the grid. *Cf. United States v. Harvey*, 484 F.3d 453, 458 (7th Cir. 2007) ("He cannot now claim that he did not understand the charge. If he had genuinely been confused, he should have said something to the judge during the Rule 11 colloquy, at a time when the government easily could have corrected the problem.").

We do not mean to suggest that there are no problems with the grid used in the plea agreement in this case; we merely hold that it was not so inherently confusing that Defendant's consent could not have been knowing and voluntary. In drafting plea agreements, we encourage the government to continue to "seek terms that will convey to each of the parties, and the court, a clear understanding of the rights and obligations created." *United States v. Enriquez*, 42 F.3d 769, 772 (2d Cir. 1994).

part, we interpret plea agreements using the ordinary rules of contract interpretation." (internal quotation marks omitted)); *United States v. Schuman*, 127 F.3d 815, 817 (9th Cir. 1997) (per curiam) (rejecting the defendant's proposed reading of the plea agreement because "it would render the waiver meaningless").   Second, to allow an allegedly incorrect guidelines calculation to render inapplicable a waiver of the right to appeal sentencing guidelines determinations "would nullify the waiver based on the very sort of claim it was intended to waive." *United States v. Smith*, 500 F.3d 1206, 1213 (10th Cir. 2007).

Moreover, even if the phrase "in accordance with" the plea agreement were susceptible to more than one interpretation, the plea colloquy here eliminated any ambiguity.  Defendant affirmed that he understood that there was a "broad range" of sentences available under the agreement and that the district judge could impose a sentence of between 4 and 87 months' imprisonment, depending on the applicable offense level and criminal history category, among other factors.  And, as we have explained, the written plea agreement specifically waives the right to challenge "any sentencing guideline determinations."  Together, the written agreement and the Rule 11 colloquy were sufficient to ensure (1) that Defendant knew that the judge would be deciding where Defendant fell within the agreed-upon sentencing grid, and (2) that Defendant understood he was giving up the right to challenge that determination.

Defendant's second contention—that he was not sentenced "in accordance with" the plea agreement because the district court's "crime of violence" determination was incorrect—is similarly unavailing.  We need not reach the merits of the "crime of violence" question because, regardless

of the correct answer to that question, Defendant was sentenced "in accordance with" the plea agreement. As we have explained, because Defendant expressly waived his right to challenge sentencing guidelines determinations, a sentence "in accordance with" the plea agreement need not rest on a correct guidelines determination. Here, the district court applied the guidelines range recommend by the PSR, to which Defendant did not object. Further, Defendant's lawyer conceded that Defendant's conviction was for a "crime of violence" and that the 16-level enhancement applied. And the below-guidelines sentence ultimately imposed fell within the range set out in the sentencing grid. Defendant's sentence thus was "in accordance with" the plea agreement.

Defendant agreed to waive his right to appeal, along with a number of other rights, in exchange for a lower sentence. He received the benefit of that bargain; after subtracting three offense levels for acceptance of responsibility, the district court imposed a below-guidelines sentence. That he "did not realize the strength of his potential appellate claims at the time that he entered into the plea agreement" does not permit him to invalidate his knowing and voluntary waiver of appellate rights. *United States v. Nguyen*, 235 F.3d 1179, 1184 (9th Cir. 2000), *abrogated on other grounds by United States v. Rahman*, 642 F.3d 1257, 1259 (9th Cir. 2011). We will enforce a valid waiver even if the claims that could have been made on appeal absent that waiver appear meritorious, because "[t]he whole point of a waiver . . . is the relinquishment of claims *regardless* of their merit." *Id.*

**DISMISSED.**

FRIEDMAN, District Judge, dissenting:

Defendant Jose Medina-Carrasco entered into a plea agreement with the government under which he agreed to waive his appellate rights "provided [he] receives a sentence in accordance with th[e] . . . plea agreement." This court previously has considered this same (or functionally equivalent) plea agreement language, from the same United States Attorney's Office, in eight unpublished opinions.[1] In at least five of those cases, the court held that this caveat is ambiguous and thus renders the waiver unenforceable absent sufficient clarification from the district court or magistrate judge.[2] Because I agree that this ambiguous waiver is unenforceable, and because I also conclude that the district court plainly erred in applying a "crime of violence"

---

[1] *United States v. Salmeron-Ozuna*, 597 F. App'x 454 (9th Cir. 2015) (unpublished); *United States v. Hernandez-Lopez*, 594 F. App'x 385 (9th Cir. 2015) (unpublished); *United States v. Banos-Mejia*, 588 F. App'x 522 (9th Cir. 2014) (unpublished); *United States v. Perez-Mancilla*, 573 F. App'x 615 (9th Cir. 2014) (unpublished); *United States v. Gonzales-Garcia*, 541 F. App'x 764 (9th Cir. 2013) (unpublished); *United States v. Rodriguez*, 540 F. App'x 662 (9th Cir. 2013) (unpublished); *United States v. Baltazar-Neri*, 540 F. App'x 630 (9th Cir. 2013) (unpublished); *United States v. Aguilar-Balbuena*, 475 F. App'x 222 (9th Cir. 2012) (unpublished).

[2] *Banos-Mejia*, 588 F. App'x at 523; *Perez-Mancilla*, 573 F. App'x at 616; *Gonzales-Garcia*, 541 F. App'x at 765; *Rodriguez*, 540 F. App'x at 662; *Aguilar-Balbuena*, 475 F. App'x at 223.

In a sixth case, *Salmeron-Ozuna*, the court did not specifically hold that the caveat was ambiguous, but stated that "[w]e are unpersuaded that the appeal waiver is ambiguous *in light of the clarifying colloquy at the change of plea hearing*." 597 F. App'x at 454 (emphasis added). In only one of the eight cases, *United States v. Hernandez-Lopez*, 594 F. App'x at 385, did the panel adopt the position taken by the majority in this case.

enhancement in calculating Medina-Carrasco's sentencing guideline range, I respectfully dissent.

## I. APPEAL WAIVERS

I begin by acknowledging that this court and every other federal court of appeals to have considered the issue have held that appeal waivers are valid: If a defendant may waive his constitutional rights as part of a plea agreement, they reason, it follows that a defendant may waive statutory rights to appeal and to collaterally attack a conviction or sentence. *See, e.g., United States v. Navarro-Botello*, 912 F.2d 318, 321 (9th Cir. 1990); *United States v. Wiggins*, 905 F.2d 51, 53–54 (4th Cir. 1990). Those decisions have been criticized by trial judges and commentators on a variety of grounds.[3] Primary among them is the reality that giving up the right to trial, to confront witnesses at trial, and to preserve the privilege against self-incrimination are all known trial rights that necessarily are forfeited by the very act of pleading guilty

---

[3] *See, e.g.*, *United States v. Melancon*, 972 F.2d 566, 571–73 (5th Cir. 1992) (Judge Parker, concurring specially); *United States v. Johnson*, 992 F. Supp. 437, 438–40 (D.D.C. 1997) (Judge Harold Greene); *United States v. Raynor*, 989 F. Supp. 43, 44–49 (D.D.C. 1997) (Judge Friedman); *United States v. Perez*, 46 F. Supp. 2d 59, 64–72 (D. Mass. 1999) (Judge Gertner), *abrogated by United States v. Teeter*, 257 F.3d 13 (1st Cir. 2001); *United States v. Vanderwerff*, No. 12-CR-0069, 2012 WL 2514933, at *5 (D. Colo. June 28, 2012) (Judge Kane), *rev'd and remanded*, 788 F.3d 1266 (10th Cir. 2015); Robert K. Calhoun, *Waiver of the Right to Appeal*, 23 HASTINGS CONST. L.Q. 127 (1995); Alexandra W. Reimelt, Note, *An Unjust Bargain: Plea Bargains and Waiver of the Right to Appeal*, 51 B.C. L. REV. 871 (2010) ; Nancy J. King, *Plea Bargains that Waive Claims of Ineffective Assistance – Waiving Padilla and Frye*, 51 DUQ. L. REV. 647 (2013); Andrew Dean, Note, *Challenging Appeal Waivers*, 61 BUFF. L. REV. 1191 (2013); Kevin Bennardo, *Post-Sentencing Appellate Waivers*, 48 U. MICH. J. L. REFORM. 347 (2015).

instead of proceeding to trial. The defendant consequently knows precisely what he or she is giving up in exchange for the benefits of the guilty plea at the very moment the plea is entered — a trial and the constitutional rights that accompany it.

Sentencing, however, does not occur contemporaneously with the plea and waiver. It is a future event, and the mistakes from which one might have reason to appeal have not yet occurred at the time a defendant waives the right to appeal or collaterally attack the plea or sentencing proceedings. A defendant cannot know what he or she has given up by waiving the right to appeal until after the judge and counsel have reviewed a yet-to-be-prepared presentence investigation report, after the judge has considered other information not known to the defendant at the time of the plea, and after the judge has actually imposed sentence. By then it is too late, no matter how disproportionate the sentence or how egregious the procedural or substantive errors committed by the sentencing judge or the defendant's own counsel. It is hard to see how a defendant at the plea hearing can ever knowingly and intelligently — that is, with "a full awareness of both the nature of the right[s] being abandoned and the consequences of the decision to abandon it," *Moran v. Burbine*, 475 U.S. 412, 422 (1986) — waive the right to appeal or collaterally attack a sentence that has not yet been imposed. Such prospective waivers in anticipation of unknown future events are inherently unknowing and unintelligent.[4]

---

[4] Some critics have also suggested that appeal waivers cannot be truly voluntary when one contracting party—the government—has such a great advantage in bargaining power because the precise charge or charges to be brought and the resulting advisory Guideline sentencing range are

Putting these concerns aside, the courts of appeals (as noted) are unanimous in recognizing the presumptive validity of appeal waivers. Each one of those courts, however, has done so with the proviso that such waivers must be rigorously assessed to assure that they have been entered knowingly, intelligently, and voluntarily. Furthermore, the courts have made clear that the question is not one of form but of substance: Did the defendant *in fact* knowingly, intelligently, and voluntarily waive the right to appeal or to collaterally attack a conviction or sentence — a determination which must be based upon the specific facts and circumstances presented by the particular case, including the defendant's "background, experience, and conduct." *United States v. Martinez*, 143 F.3d 1266, 1269 (9th Cir. 1998) (quoting *Edmonds v. Arizona*, 451 U.S. 477, 482 (1981)). And as with waivers of constitutional rights, "a heavy burden" rests on the government to demonstrate by a preponderance of the evidence that the waiver was voluntary and that the defendant knowingly and intelligently waived these important statutory rights. *See Berghuis v. Thompkins*, 560 U.S. 370, 383–84 (2010); *United States v. Garibay*, 143 F.3d 534, 536–37 (9th Cir. 1998); *see also United States v. Andis*, 333 F.3d 886, 890 (8th Cir. 2002).

## II. THIS WAIVER IS UNENFORCEABLE

Under this court's jurisprudence, Medina-Carrasco's "waiver of his appellate rights is enforceable if (1) the language of the waiver encompasses his right to appeal on the grounds raised, and (2) the waiver is knowingly[,]

---

totally up to the prosecutor. It is illusory, they say, to suggest that the defendant has any real bargaining power in this context, any free and deliberate choice.

[intelligently,] and voluntarily made." *United States v. Charles*, 581 F.3d 927, 931 (9th Cir. 2009) (quoting *United States v. Jeronimo*, 398 F.3d 1149, 1154 (9th Cir. 2005), *overruled on other grounds by United States v. Castillo*, 496 F.3d 947, 957 (9th Cir. 2007) (en banc)). The court must "determine what the defendant reasonably understood to be the terms of the agreement when he pleaded guilty," *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993) (footnote omitted), and then that he voluntarily and knowingly waived his rights as he understood them, *see Charles*, 581 F.3d at 932 (Because defendant "reasonably could have believed that he retained his right to appeal his sentence to the extent that the district court determined he was a career offender," "[defendant] did not waive his right to appeal [that] determination."). "The drafter of the plea agreement, typically the government, is responsible for any lack of clarity such that ambiguities are construed in favor of the defendant." *Charles*, 581 F.3d at 931.

Section IV of the plea agreement here states that Medina-Carrasco waives his right to appeal "provided [he] receives a sentence in accordance with this fast-track plea agreement." As the majority notes, Medina-Carrasco argues that the "in accordance with" caveat is susceptible to two interpretations. Slip Op. at 9. First, the waiver is effective so long as Medina-Carrasco received a sentence in any of the eighteen different sentencing ranges listed in the sentencing grid contained in the plea agreement, because that is what he agreed to. This is the interpretation adopted by the majority. Slip Op. at 9. Or, second, the waiver is effective so long as Medina-Carrasco received a sentence based on a properly calculated sentencing guideline range, *id.* at 10, that is, so long as it does not exceed 87 months. The majority rejects this alternative interpretation as implausible for two reasons: (1) it would

"render meaningless the express waiver of the right to challenge 'any sentencing guideline determinations' contrary to basic principles of contract interpretation"; and (2) to allow an allegedly incorrect guidelines calculation to render a waiver inapplicable "would nullify the waiver based on the very sort of claim it was intended to waive." Slip Op. at 10–11.[5]

I disagree with the majority's view that the second, alternative interpretation is implausible. In my view, both interpretations posited by Medina-Carrasco are plausible. And if both are plausible, the waiver is ambiguous. It follows that Medina-Carrasco did not knowingly and intelligently waive his right to appeal the district court's determination of whether his prior conviction qualified as a "crime of

---

[5] The majority's rejection of this alternative interpretation as implausible is troublesome in light of the fact that a panel of this court seemingly held the exact opposite in *United States v. Baltazar-Neri*, 540 F. App'x at 631, an unpublished opinion that counsel were directed to address in their briefs by this court's order of June 18, 2014. In *Baltazar-Neri*, the court confronted a functionally equivalent caveat requiring the sentence to be "consistent with" the plea agreement. *Id.* Like Medina-Carrasco, the defendant there challenged a 16-level sentencing enhancement for a crime of violence under the same sentencing guideline at issue here. The government conceded that the enhancement was incorrectly applied because the defendant had never been convicted of a crime of violence, but contended that the defendant had waived his right to appeal nevertheless. *Id.* The defendant urged the court to adopt the interpretation advanced by Medina-Carrasco in this case — that his sentence was not "consistent with" the plea agreement because the sentencing guideline range was incorrectly calculated — and the court explicitly did so, presumably considering it plausible. *Id.* The court said: "The sixteen-level enhancement is 'consistent' with the plea agreement only if [the defendant] was previously convicted of burglary of a dwelling," which he was not, and "conclude[d] that [the defendant] did not unambiguously waive his right to appeal." *Id.*

violence" under U.S.S.G. 2L1.2(b)(1)(A)(ii).  *See Charles*, 581 F.3d at 931–32.

As noted, the majority rejects the alternative interpretation for two reasons.  In my opinion, the first reason is incorrect because the waiver of the right to appeal "any sentencing guideline determinations" is not "render[ed] meaningless" under that alternative interpretation.  The basic principles of contract interpretation invoked by the majority dictate that the contract "must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations."  *Wapato Heritage, L.L.C. v. United States*, 637 F.3d 1033, 1039 (9th Cir. 2011) (internal quotation omitted).  When read together with the alternative interpretation of the caveat "in accordance with," that portion of the waiver means "any *correct* sentencing guideline determinations." Although it would bar fewer appeals than the government would prefer, the waiver would be far from meaningless.

As for the majority's second reason — that this interpretation counterintuitively allows appeals on claims that ordinarily would be waived by plea agreement waivers — I agree.  But the fact that the government almost certainly did not intend to draft a seemingly self-defeating waiver is irrelevant.  Our inquiry must focus on the literal terms of the plea agreement, a contract drafted by the government, and what Medina-Carrasco "reasonably understood to be the terms of the agreement when he pleaded guilty."  *De la Fuente*, 8 F.3d at 1337; *see also Charles*, 581 F.3d at 931; *United States v. Cope*, 527 F.3d 944, 950 (9th Cir. 2008) ("The drafter of the plea agreement — usually the government . . . — bears responsibility for any lack of clarity, such that [a]mbiguities are . . . construed in favor of the

defendant, . . . and the government is ordinarily held to the literal terms of the plea agreement it made.") (quoting *United States v. Transfiguracion*, 442 F.3d 1222, 1228 (9th Cir. 2006)) (internal quotation marks and citations omitted).

Unlike the majority, I therefore find both interpretations of the "in accordance with language" plausible. And because Medina-Carrasco could have reasonably understood the waiver to mean either of the two plausible interpretations or, frankly, not understood what he was waiving at all, the plea agreement was ambiguous and his waiver of appellate rights was not knowing and intelligent. Absent any clarification from the magistrate judge that eliminated the ambiguity of the written agreement, the waiver of appellate rights is unenforceable. *See United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000) ("If . . . a term of a plea agreement is not clear on its face, we look to the facts of the case to determine what the parties reasonably understood to be the terms of the agreement. If, after we have examined the extrinsic evidence, we still find ambiguity regarding what the parties reasonably understood to be the terms of the agreement, then the government 'ordinarily must bear responsibility for any lack of clarity.'") (quoting *De la Fuente*, 8 F.3d at 1338); *United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir. 1996) ("This court looks into the circumstances surrounding the entry of the plea agreement to determine whether the defendant agreed to its terms knowingly and voluntarily.").

In that regard, I respectfully disagree with the majority's conclusion that, even assuming the "in accordance with" caveat in the plea agreement was ambiguous — and I think it is — the plea colloquy saves the waiver. Slip Op. at 11. While the magistrate judge asked Medina-Carrasco a number of questions regarding the plea agreement and his

constitutional and statutory rights, only one concerned the waiver of his right to appeal:  "[D]o you understand that, according to your written plea agreement, you are giving up your right to appeal your conviction and sentence?"   The magistrate judge, however, did not explain the parameters of the waiver or the circumstances in which it would apply.  He failed to clear up or even address the ambiguity as to the meaning of the phrase "in accordance with."   And the representative of the same United States Attorney's Office that had been admonished by this court on several prior occasions in similar situations, *see supra* at 1, failed to urge him to do so.

Moreover, the single question posed by the magistrate judge provided incorrect information.  Even the majority acknowledges that Medina-Carrasco did not waive *every* issue he might appeal from his conviction and sentence — at a bare minimum, under the majority's interpretation, he reserved the right to appeal from a sentence outside the ranges listed in the agreement. Slip Op. at 9–10.  And despite the unequivocal language of the plea agreement, he preserved the right to raise on collateral attack a claim of ineffective assistance of counsel at the plea or sentencing and certain other constitutional violations that infected either.  *See Washington v. Lampert*, 422 F.3d 864, 870–71 (9th Cir. 2005) (holding that plea agreement that waives right to file federal habeas petition is unenforceable with respect to ineffective assistance of counsel claim that challenges voluntariness of waiver); *see also United States v. Adams*, 780 F.3d 1182, 1183–84 (D.C. Cir. 2015); *United States v. Hahn*, 359 F.3d 1315, 1327 (10th Cir. 2004); *Andis*, 333 F.3d at 891.  The plea colloquy therefore failed to eliminate the ambiguity of the written plea agreement and to clarify that the caveat meant only that Medina-Carrasco could appeal if the sentence

was outside the broad 4 to 87 months range of imprisonment in the agreement. In my view, the waiver of appellate rights is unenforceable, and I would reach the merits of Medina-Carrasco's appeal.

There is yet another, separate reason to conclude that Medina-Carrasco did not understand the consequences of his plea sufficiently to knowingly and intelligently waive his right to appeal. Like the majority, I, too, am concerned about the lack of clarity in the "algebraic algorithm" of the plea agreement. Slip Op. at 10 n.1. In my view, however, the lack of clarity is fatal to the validity of the appeal waiver, independent of the ambiguity addressed above. While ostensibly labeled a Rule 11(c)(1)(C) plea agreement, the grid presented in the plea agreement contains a mind-numbing 18 different potential guideline sentencing ranges, reached by combining three possible offense levels with six possible criminal history categories, which apparently reflect reductions for acceptance of responsibility and the fast track program, without so stating. The plea agreement contains no explanation as to how the district court would determine which range or criminal history category would apply. The potential sentences range from 4 months to 87 months of imprisonment, depending on what adjustments, offense characteristics, and prior offenses are counted and whether Medina-Carrasco was or was not previously convicted of a crime of violence. The majority states that "the typical person unfamiliar with the intricacies of the federal sentencing guidelines would be confused by the grid at first," Slip Op. at 10 n.1, but finds comfort in the fact that this Spanish-speaking defendant affirmed through an interpreter that his lawyer had explained the plea agreement to him and that the magistrate judge "explained in general how the grid worked," *id.* In my view, the plea agreement drafted by the

government is unacceptable — certainly I would never accept a plea based on this document — and the magistrate judge's explanation woefully failed to clarify it. Medina-Carrasco's consent therefore could not have been knowing and intelligent.

### III. CRIME OF VIOLENCE: THE DISTRICT COURT PLAINLY ERRED

The district court concluded that Medina-Carrasco's prior aggravated assault conviction in Arizona categorically qualified as a "crime of violence" under Section 2L1.2(b)(1)(A)(ii) of the Federal Sentencing Guidelines and therefore applied a 16-level enhancement. The definition of "crime of violence" includes the crime of aggravated assault under state law or "any other offense that has as an element the use, attempted use, or threatened use of physical force" against another. U.S.S.G. § 2L1.2, cmt. n.l; *see United States v. Marcia-Acosta*, 780 F.3d 1244, 1248 (9th Cir. 2015). Because Medina-Carrasco failed to object to the 16-level enhancement, this court may only reverse if it finds plain error.[6]

---

[6] Although Medina-Carrasco conceded at sentencing that the enhancement applied, he did not thereby waive his right to challenge the sentence. There is no evidence that Medina-Carrasco made a tactical decision not to challenge the probation office's (incorrect) initial determination that his prior conviction qualified as a "crime of violence." *See United States v. Jimenez*, 258 F.3d 1120, 1124 (9th Cir. 2001) (holding that a defendant who conceded that the PSR correctly applied the Guidelines did not waive his right to challenge his sentence where there was no evidence that he considered objecting but for "some tactical or other reason" rejected the idea); *see id.* at 1124 (court's legal determinations "are not immunized from appellate review simply because a defendant, present at a hearing where that determination is made, mistakenly agrees with the court.").

The government and Medina-Carrasco agree that A.R.S. § 13-203(A) is divisible under the "modified categorical approach" announced by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990). *See also Descamps v. United States*, 133 S. Ct. 2276, 2283–85 (2013). They also agree that Medina-Carrasco specifically was convicted under A.R.S. § 13-203(A)(3), a subsection of the statute which requires "[k]nowingly touching another person with the intent to injure, insult or provoke such person." The government, however, contends that subsection (A)(3) is further divisible, and that Medina-Carrasco was convicted under the "intent to injure" provision of that subsection. The government is wrong.

In this case, the jury would not have been instructed to decide whether it found Medina-Carrasco guilty of touching with the intent to injure because that is not a separate statutory element under subsection (A)(3). *See Rendon v. Holder*, 764 F.3d 1077, 1086 (9th Cir. 2014) ("Only when state law requires that in order to convict the defendant the jury must unanimously agree that he committed a particular substantive offense contained within the disjunctively worded statute are we able to conclude that the statute contains alternative *elements* and not alternative *means*.") (emphasis in original). All that would have been required of the jury was to determine unanimously whether it found that Medina-Carrasco's conduct violated subsection (A)(3); some jurors could have found intent to injure, others intent to insult, and still others intent to provoke, and still have rendered a unanimous verdict. *Rendon*, 764 F.3d at 1085 ("As long as the defendant's conduct violates the statute, the jury can disagree as to how, and a later sentencing court cannot conclude that the jury in fact agreed on the particular means of commission.").

Under *Johnson v. United States*, 559 U.S. 133, 138–40 (2010), "touching" does not qualify as "the use, attempted use, or threatened use of physical force," and Medina-Carrasco's prior conviction under subsection (A)(3) therefore does not qualify as a "crime of violence" under Section 2L1.2(b)(1)(A)(ii). *Accord United States v. Ossana*, 638 F.3d 895, 900 (8th Cir. 2011) (holding that a conviction under A.R.S. § 13-203(A)(3) "would not qualify as a crime of violence" because "such contact does not qualify as the use of physical force because it is not violent force") (citing *Johnson*, 559 U.S. at 138–39). Adding 16 additional offense levels when there was no crime of violence quadrupled Medina-Carrasco's sentencing guideline range from 12 to 18 months of imprisonment to 57 to 71 months of imprisonment. This was plain error.

I therefore would reverse the sentence and remand for resentencing.