FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. ERIC JAMAR GOODALL, *Defendant-Appellant*. | No. 18-10004 D.C. No. 2:15-CR-00077-JCM-VCF-1 ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted July 8, 2021
San Francisco, California

Filed October 13, 2021
Amended December 28, 2021

Before: Susan P. Graber and Kenneth K. Lee, Circuit
Judges, and Kathryn H. Vratil,* District Judge.

Order;
Opinion by Judge Lee

---

* The Honorable Kathryn H. Vratil, United States District Judge for
the District of Kansas, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel dismissed, as barred by the appellate waiver in his plea agreement, Eric Goodall's appeal seeking to vacate his conviction and sentence for brandishing a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c).

After Goodall filed his appeal, the Supreme Court held in *United States v. Davis*, 139 S. Ct. 2319 (2019), that § 924(c)'s "residual clause" defining a "crime of violence" was unconstitutionally vague.  Goodall asserted that his § 924(c) conviction must be vacated because a Hobbs Act conspiracy is not a "crime of violence" under § 924(c)'s "elements clause," which remains valid post-*Davis*.

The panel held that Goodall's appellate waiver forecloses any challenge to his conviction because the provision, in which he waived "the right to appeal any . . . aspect of the conviction or sentence," meets both conditions for enforcement:  (1) the text of the broad appellate waiver bars any challenge based on *Davis*; and (2) the waiver was knowing and voluntary.  The panel explained that when a defendant waives his appellate rights, he knows that he is giving up all appeals, no matter what unforeseen events may happen.

The panel also held that the "illegal sentence" exception to an appellate waiver does not apply.  The panel declined to

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

extend *United States v. Torres*, 828 F.3d 1113 (9th Cir. 2016), which held that an appellate waiver does not apply to an "illegal sentence," to invalidate an appellate waiver if the *conviction* was later found to be illegal. The panel wrote that "illegal sentence" has a precise legal meaning, which does not include illegal convictions; and that the rationale for the "illegal sentence" exception rests on the inherent uncertainty in sentencing, which does not exist for convictions. The panel wrote that although there always remains a chance the law could change in a defendant's favor, the defendant knowingly and voluntarily assumes that risk because he receives a presumably favorable deal under existing law. The panel noted that the practical effect of Goodall's argument could undo nearly all appellate waivers, yielding perverse consequences.

## COUNSEL

Angela H. Dows (argued), Premier Legal Group, Las Vegas, Nevada, for Defendant-Appellant.

Elizabeth Olson White (argued), Appellate Chief; Peter S. Levitt, Assistant United States Attorney; United States Attorney's Office, Reno, Nevada; for Plaintiff-Appellee.

Andrea K. George, Executive Director and Colin G. Prince, Chief Appellate Attorney, Federal Defenders of Eastern Washington, Spokane, Washington; for Amici Curiae Federal Public Defenders of the Ninth Circuit.

**ORDER**

The Opinion filed on October 13, 2021, is amended as follows:

On slip opinion page 18, line 24, insert a footnote after <invitation.> stating: <Defendant did not raise, and we do not consider, the applicability, if any, of an exception for a miscarriage of justice. We express no view on the viability of that exception in other circumstances.>

The Clerk shall file the amended opinion submitted with this Order.

Appellant's Petitions for Panel Rehearing and Rehearing En Banc (Dkt. No. 62) are otherwise **DENIED**. No further petitions for rehearing may be filed.

---

**OPINION**

LEE, Circuit Judge:

Facing potentially more than seven decades in prison for his role in a string of armed robberies, Eric Goodall struck a plea deal. He pleaded guilty to two counts of conspiracy to commit Hobbs Act robbery (18 U.S.C. § 1951(a)) and one count of brandishing a firearm during and in relation to a crime of violence (18 U.S.C. § 924(c)(3)). He also accepted a 20-year sentencing recommendation and agreed to waive his right to appeal his conviction or sentence. The district court imposed an even shorter sentence of 14 years' imprisonment. About a year and a half after his sentencing, the Supreme Court in *United States v. Davis*, 139 S. Ct. 2319 (2019), held that a conspiracy to commit Hobbs Act robbery

cannot be a crime of violence under the residual clause of 18 U.S.C. § 924(c)(3).

Goodall now tries to wriggle his way out of his plea deal. Despite his appellate waiver, Goodall seeks to vacate his § 924(c) conviction, arguing that he could not have knowingly waived an appellate issue not yet in existence at the time of his plea deal. He also asks this court to expand our "illegal sentence" exception to an appellate waiver and carve out yet another exemption for an "illegal conviction." *See United States v. Torres*, 828 F.3d 1113, 1124–25 (9th Cir. 2016).

We uphold the appellate waiver in Goodall's plea agreement and thus dismiss his appeal. By waiving his appellate rights, Goodall knowingly and voluntarily assumed the risk that the law might change in his favor. We also decline to expand the "illegal sentence" exception. Our decision in *Torres* carefully circumscribed the definition of "illegal sentence," and its reasoning does not apply to purportedly "illegal convictions."

## BACKGROUND

### I. Goodall and his crew rob a series of stores in Las Vegas.

In a span of two months, Eric Goodall and his two associates, T.P.F. and P.A.V., perpetrated a series of armed robberies in Las Vegas. The group first targeted T.P.F.'s former employer, the Beauty Supply Warehouse. T.P.F. dropped Goodall and P.A.V. off at the store. Once inside, Goodall brandished a firearm and demanded that the store clerks turn over all the cash in the store. After the workers handed over about $3,500, Goodall and P.A.V. escaped and jumped into T.P.F.'s getaway car. Using some of their ill-

gotten gains from the robbery, Goodall illegally bought a TEC-9 handgun.

About a month later, the trio then set their sights on a different Beauty Supply Warehouse. T.P.F. again dropped Goodall and P.A.V. off at the store. The pair repeated their routine with Goodall clutching his new TEC-9 gun and demanding cash from the register. After clearing the cash register, Goodall and P.A.V. forced the manager and his employees, at gunpoint, to open the safe in the back of the store. After taking the cash, the pair fled in T.P.F.'s getaway car. They made off with $1,900.

The group struck again about a week later at an O'Reilly's Auto Parts store. This time, all three men entered the store. Goodall acted as a lookout while T.P.F. and P.A.V. wielded handguns and demanded the money in the cash register. Again, the three men ordered the clerks to open the safe in the back of the store. Despite threats to shoot them, the clerks could not open the safe because of its ten-minute timer, so the trio fled with only $1,135.92.

Goodall then split off from the group and went solo. He drove to a second O'Reilly's on West Craig Road with his TEC-9. Flashing his TEC-9, Goodall demanded cash from the register before forcing the clerks to the back of the store to open the safe. In total, he left with $615. The next day, Goodall targeted a Cricket Wireless Store. Repeating his strategy, Goodall left the store with $3,848 from the store's register and safe. Two days later, Goodall robbed another Cricket Wireless store. This time, Goodall became more violent. When the employees could not open the safe, Goodall began counting down from five, threatening to shoot them when he reached zero. Goodall eventually left the store with just the petty cash box containing $600.

Later that day, Goodall reunited with T.P.F. and P.A.V. for what would be the group's last heist. In Goodall's words, the group wanted to "go big," this time targeting the National Jewelry Liquidation Center. In preparation, the group went to Wal-Mart to purchase rubber gloves and pantyhose. They arrived at the jewelry store just before 2:00 P.M. The jewelry store's security was far tighter, employing an "air-lock" entry system. Goodall and P.A.V. posed as cleaners to gain entry. Once the staff unlocked the door, Goodall and P.A.V. donned their pantyhose face masks and entered with firearms in hand. As Goodall and P.A.V. ordered the customers and employees to the floor, T.P.F. backed the vehicle up to the store's doors, preventing anyone from entering or exiting.

Goodall and P.A.V. repeatedly threatened those inside the store as Goodall forced the manager at gunpoint to open display cases and a timed safe. In total, the pair stuffed over $700,000 in watches, jewelry, and other valuable items into a knapsack. Hearing a helicopter overhead and fearing law enforcement's imminent arrival, Goodall and P.A.V. hopped into the getaway vehicle with their knapsack. Unknown to them, one of the items contained a GPS tracking beacon.

T.P.F. sped away from the scene. But the Las Vegas police used the GPS beacon to close in on the getaway car. Driving recklessly to evade arrest, T.P.F. struck a curb near the Mirage Hotel and Casino. Goodall and P.A.V. jumped out of the car and fled on foot. The police, however, caught up to them and arrested them.

## II. Goodall agrees to a plea deal.

A grand jury returned a four-count indictment against Goodall, charging him with two counts of Hobbs Act

Conspiracy[1] (Counts One and Two), 18 U.S.C. § 1951(a), and two counts of brandishing a firearm during and in relation to a crime of violence (Counts Three and Four), 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2.  The two Hobbs Act Conspiracy charges served as the predicate "crimes of violence" for the § 924(c) charges.

Goodall pleaded guilty to Counts One, Two, and Four on May 26, 2015.  The government agreed to drop Count Three, under which Goodall, if convicted, would have faced an additional 25-year consecutive sentence.  *United States v. Beltran-Moreno*, 556 F.3d 913, 915 (9th Cir. 2009).  As part of the plea agreement, and central to this appeal, Goodall agreed to a broad appellate waiver:

> The defendant knowingly and expressly waives: (a) the right to appeal any sentence imposed within or below the applicable Sentencing Guidelines range as determined by the Court;  (b) the right to appeal the manner in which the Court determined the sentence on the grounds set forth in 18 U.S.C. § 3742;  and (c) the right to appeal *any other aspect of the conviction or sentence* and any order of restitution or forfeiture.

> The defendant also knowingly and expressly waives all collateral challenges, including any claims under 28 U.S.C. § 2255, to his conviction, sentence, and the procedure by

---

[1] The Hobbs Act prohibits actual or attempted robbery or extortion affecting interstate or foreign commerce in any way or degree.  18 U.S.C. § 1951.  Section 1951 also proscribes conspiracy to commit robbery or extortion without reference to the conspiracy statute at 18 U.S.C. § 371.

which the Court adjudicated guilt and imposed sentence . . . ." (emphasis added).

The only grounds for appeal that Goodall preserved were "non-waivable claims of ineffective assistance of counsel" and sentences that are "an upward departure or an upward variance from the Sentencing Guidelines range determined by the Court."

Goodall appeared before the district court for sentencing on December 20, 2017. Although Goodall had pleaded guilty, he now questioned the legality of his § 924(c) conviction. One month after Goodall pleaded guilty, the Supreme Court held in *Johnson v. United States*, 576 U.S. 591, 606 (2015), that the so-called "residual clause"[2] in the definition of a "violent felony" under the Armed Career Criminal Act, 18 U.S.C. § 924(e), was unconstitutionally vague. Goodall argued that the similarly worded "residual clause" in § 924(c)'s definition of a "crime of violence" was also unconstitutionally vague. If true, Goodall maintained that his conviction for Hobbs Act conspiracy could not constitute a "crime of violence," making his § 924(c) conviction legally defective.

The government urged the district court to focus on the facts Goodall admitted in the plea agreement: that he conspired to commit—and committed—eight armed

---

[2] The Armed Career Criminal Act defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . " that "has as an element the use, attempted use, or threatened use of physical force against the person of another" or "is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." § 924(e)(2)(B) (emphasis added). The emphasized clause is known as the "residual clause." *Johnson*, 576 U.S. at 594.

robberies, and he personally brandished a firearm during those robberies.  The government claimed that Goodall could have been charged with eight counts of Hobbs Act robbery (rather than conspiracy), which constitutes a crime of violence.  If so, he would have faced 127 years in prison but for the leniency under the plea agreement that Goodall now attacks.

Before sentencing, the parties jointly agreed to recommend a 240-month sentence to the court.  The court rejected the stipulated 240-month sentence as "excessive" under the sentencing factors in 18 U.S.C. § 3553(a).  Instead, the court sentenced Goodall to only 168 months: 84 months for the Hobbs Act conspiracy counts and 84 months for the § 924(c) conviction, the mandatory minimum sentence for that offense.  As for Goodall's objection under *Johnson*, the court advised, without deciding the issue, that Goodall could try his luck on appeal.

### III.     Goodall appeals to vacate his § 924(c) conviction.

On December 29, 2017, Goodall filed an appeal, asking this court to vacate his § 924(c) conviction and its 84-month sentence.  About a year and a half later, the Supreme Court held in *United States v. Davis* that § 924(c)'s "residual clause" defining a "crime of violence" was unconstitutionally vague.  139 S. Ct. 2319, 2336 (2019).  We ordered supplemental briefing, asking the parties to address *Davis*'s effect on this appeal.

Goodall asserts that, post-*Davis*, only § 924(c)'s "elements clause"[3] defining a "crime of violence" remains

---

[3] Section 924(c) defines a "crime of violence" as a felony that "has as an element the use, attempted use, or threatened use of physical force

valid and that his conviction must be vacated because a Hobbs Act conspiracy is not a "crime of violence" under the "elements clause." The government concedes that a Hobbs Act conspiracy is not a "crime of violence" under the "elements clause," but argues that Goodall's appellate waiver bars his challenge. And even if Goodall succeeds on his appeal, the government argues that he likely will be resentenced to far more prison time than the 168 months he had received.[4]

## STANDARD OF REVIEW

We review de novo whether a defendant waived his right to appeal under a plea agreement. *United States v. Watson*, 582 F.3d 974, 981 (9th Cir. 2009).

---

against the person or property of another" (*i.e.*, the "elements clause"), or "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." (*i.e.*, the "residual clause"). 18 U.S.C. § 924(c)(3).

[4] On remand, Goodall would remain obligated under his plea agreement to request a sentence of 240 months in prison. If the court accepted this recommendation, Goodall would serve another six years in prison. But if Goodall were to request less than 240 months, he would breach the plea agreement, freeing the government from its obligations. The government claims that it could then pursue a superseding indictment and conviction on eight substantive Hobbs Act robberies and the eight corresponding § 924(c) offenses, which would result, upon conviction, in mandatory prison time of 56 years on the § 924(c) counts, along with any time the court might impose on the robbery convictions. We need not, and do not, decide whether the government's interpretation is correct.

**ANALYSIS**

## I. Goodall's Appellate Waiver Forecloses Any Challenge to His Conviction.

An appellate waiver is enforceable if "(1) the language of the waiver encompasses [the defendant's] right to appeal on the grounds raised, and (2) the waiver is knowingly and voluntarily made." *United States v. Jeronimo*, 398 F.3d 1149, 1153 (9th Cir. 2005), *overruled on other grounds by United States v. Jacobo Castillo*, 496 F.3d 947, 957 (9th Cir. 2007) (en banc). Because the waiver provision in Goodall's plea agreement meets both conditions, we must enforce it.

### A. The text of the broad appellate waiver bars any challenge based on *Davis*.

We start with the "fundamental rule that plea agreements are contractual in nature and are measured by contract law standards." *United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000) (brackets omitted) (internal quotation marks omitted). We thus "will generally enforce the plain language of a plea agreement if it is clear and unambiguous on its face." *Jeronimo*, 398 F.3d at 1153 (applying rule to waiver provision).

Goodall agreed to a broad appellate waiver: He waived "the right to appeal *any* . . . aspect of the conviction or sentence." (emphasis added). The provision has two narrow exceptions to the broad waiver: an ineffective assistance of counsel claim and an upward departure from the Sentencing Guidelines range. The parties—and we—agree that neither exception applies here. Goodall, however, insists that the waiver does not preclude his appeal because it did not explicitly relinquish his appeal based on *Davis*. In other words, Goodall asks us to require the government to

enumerate every possible ground for appeal, both known and unknown, to enforce a plea deal.

But the plain text of the plea agreement forecloses Goodall's argument. He waived his "right to appeal *any . . .* aspect of the conviction or sentence." And under the *expressio unius* canon of construction, the two narrow exceptions to the waiver confirm that Goodall's waiver of "any other aspect of his conviction or sentence" includes this appeal. *See Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1234 (9th Cir. 2013) (under the *expressio unius* rule of contract interpretation, the mention of one thing implies the exclusion of all others). Faced with this type of broad waiver, we "have consistently read general waivers of the right to appeal to cover *all* appeals." *United States v. Rahman*, 642 F.3d 1257, 1259 (9th Cir. 2011) (emphasis added). And even if a plea agreement "does not specifically contemplate" the defendant's argument on appeal, a waiver's "broad language clearly bars" bringing an appeal. *Jeronimo*, 398 F.3d at 1154 (holding that defendant's waiver of "any and all rights to appeal" precludes appeals based on "*all* grounds"). That is the case here.

## B. Goodall knowingly and voluntarily waived his right to challenge his § 924(c) conviction.

We next consider Goodall's argument that his waiver—even if it applies to his *Davis* challenge—was not knowing and voluntary. After Goodall entered his guilty plea, the Supreme Court decided *Johnson* and *Davis.* Goodall contends that these two cases render his appellate waiver unknowing and involuntary because he could not possibly have contemplated this argument when he waived his appellate rights.

We have found appellate waivers knowing and voluntary despite later changes in the law. "[A] change in the law does not make a plea involuntary and unknowing." *United States v. Cardenas*, 405 F.3d 1046, 1048 (9th Cir. 2005). That a defendant does not "foresee the specific issue that he now seeks to appeal does not place that issue outside the scope of his waiver." *United States v. Johnson*, 67 F.3d 200, 203 (9th Cir. 1995); *see also United States v. Navarro-Botello*, 912 F.2d 318, 320 (9th Cir. 1990) (rejecting the argument that an appellate waiver is "involuntary because it is logically impossible to make a knowing and intelligent waiver of unknown rights.").

When a defendant waives his appellate rights, he knows that he is giving up all appeals, no matter what unforeseen events may happen. In exchange for the waiver, a defendant receives "certainty derived from the negotiated plea with a set sentence parameter." *Navarro-Botello*, 912 F.2d at 320; *see also Town of Newton v. Rumery*, 480 U.S. 386, 394 (1987) ("[T]he certain benefits of escaping criminal prosecution exceed the speculative benefits of prevailing" in a future action.). Here, the government dropped one § 924(c) count (which reduced the mandatory minimum sentence by 25 years) and agreed to recommend a 240-month sentence. When Goodall agreed to this plea agreement, he apparently believed that it was a good deal for him. Just because Goodall's choice looks less favorable "with the benefit of hindsight[] does not make the choice involuntary." *Navarro-Botello*, 912 F.2d at 320. A plea agreement is no different in this respect from any other contract in which someone may have buyer's remorse after an unforeseen future event—the contract remains valid because the parties knowingly and voluntarily agreed to the terms. There is no do-over just because a defendant later

regrets agreeing to a plea deal.  We thus find that Goodall's waiver of his appellate rights was knowing and voluntary.

## II. The "illegal sentence" exception to an appellate waiver does not apply.

Finally, Goodall latches onto our decision in *Torres*, 828 F.3d at 1125, in which we held that an appellate waiver does not apply to an "illegal sentence." Goodall argues that we should extend *Torres* beyond an "illegal sentence" and invalidate an appellate waiver if the *conviction* was later found to be "illegal."  We decline to do so.

In *Torres*, we refused to enforce an appellate waiver when the defendant received a sentencing enhancement under an unconstitutionally vague provision of the Sentencing Guidelines. *Torres*, 828 F.3d at 1125.  Because the defendant's sentence with the enhancement was greater than what was statutorily authorized for the conviction, his sentence was "illegal," and we vacated the sentence.  *Id.*

But this case is different from *Torres*. Rather than challenge his sentence, Goodall seeks to vacate his § 924(c) conviction.  And that key difference matters for two reasons.

First, we limited *Torres* to an "illegal sentence" based in part on the technical definition of that term.  As we have explained, "the phrase 'illegal sentence' has a precise legal meaning," which does not include illegal convictions. *See United States v. Vences*, 169 F.3d 611, 613 (9th Cir. 1999) (quoting *United States v. Fowler*, 794 F.2d 1446, 1449 (9th Cir. 1986)).  An illegal sentence is one "not authorized by the judgment of conviction, . . . in excess of the permissible statutory penalty for the crime, or [that] is in violation of the Constitution." *United States v. Johnson*, 988 F.2d 941, 943 (9th Cir. 1993).  This definition is imported from our

circuit's case law interpreting an earlier version of Federal Rule of Criminal Procedure 35(a), which stated that a "court may correct an illegal sentence at any time." *See Fowler*, 794 F.2d at 1448. That exception for correcting an illegal sentence allowed the defendant in *Torres* to vacate his illegal sentence. Rule 35, however, did not authorize (and does not authorize) corrections for illegal convictions. *See Johnson*, 988 F.2d at 943 (rejecting Rule 35 motion because defendant "argue[d] he should not have been convicted . . . .").

Second, our rationale for the "illegal sentence" exception rests on the inherent uncertainty in sentencing. When the parties agree to a plea deal, the sentence remains unknown because the sentencing "does not occur contemporaneously with the plea and waiver." *United States v. Medina-Carrasco*, 815 F.3d 457, 464 (9th Cir. 2015) (Friedman, J., dissenting). Rather, the district court decides later and need not follow the plea deal's recommendation or the Sentencing Guidelines. So the court may impose a longer sentence than what the parties agreed because it believes that the defendant deserves a harsher sentence. Or the court may issue a longer sentence because it erred in applying the Sentencing Guidelines. And in some cases, a court might mistakenly impose a sentence greater than the one authorized by law. Thus, "the mistakes from which one might have reason to appeal have not yet occurred at the time a defendant waives the right to appeal or collaterally attack" the sentence. *Id.* In short, the sentence is beyond the control of the parties and their plea agreement.

But that uncertainty does not exist for convictions. The contours of a conviction are fully known when the defendant pleads guilty and waives his appellate rights. The defendant admits his guilt, the facts alleged in the plea agreement, and the sufficiency of the facts to establish his guilt on each

element of the crime charged.  He also knows precisely what he is "giving up in exchange for the benefits of the guilty plea at the very moment the plea is entered—a trial and the constitutional rights that accompany it." *Id.*  Although there always remains a chance the law could change in the defendant's favor, the defendant knowingly and voluntarily assumes that risk because he receives a presumably favorable deal under existing law.

The Seventh Circuit recently agreed that defendants assume the risk of later changes in the law.  In *Oliver v. United States*, 951 F.3d 841 (7th Cir. 2020), the Seventh Circuit rejected an argument identical to Goodall's.  The defendants pleaded guilty to multiple charges, including a § 924(c) charge, after committing a string of robberies.  *Id.* at 843.  In exchange for the government's agreement to dismiss several charges and recommend a more lenient sentence, the defendants waived their right to appeal their convictions or sentences.  *Id.*  And, as here, the defendants later sought to vacate their § 924(c) convictions under *Johnson* and *Davis*, arguing that they were not convicted of a predicate "crime of violence."  *Id.* at 844.

The Seventh Circuit denied their challenge, holding the defendants to the terms of their plea bargain.  While the Seventh Circuit does not recognize an "illegal sentence" exception, the court enforced the appellate waiver because it held that defendants assume the risk that the law may change.  *Id.* at 845.  The "major purpose of an [appellate] waiver is to account in advance for unpredicted future developments in the law." *Id.* at 845.  Waivers "allocate the risk of the unknown for both sides: 'By binding oneself one assumes the risk of future changes in circumstances in light of which one's bargain may prove to have been a bad one.'" *Id.* (quoting *United States v. Bownes*, 405 F.3d 634, 636 (7th

Cir. 2005)). At the time of their pleas, the defendants in *Oliver* "obtained substantial benefits in exchange for their promises. The government dropped other robbery and firearm charges and recommended favorable departures from the Sentencing Guidelines." *Id.* at 846. Likewise here, Goodall cannot enjoy the fruits of his favorable plea agreement and then later claim the deal is rotten.[5]

Lastly, we cannot turn a blind eye to the practical effect of Goodall's argument. If the "illegal sentence" exception is as broadly construed as Goodall urges, a defendant could try to nullify an otherwise valid appellate waiver by simply alleging error in the conviction. This interpretation might undo nearly all appellate waivers, past and present, yielding "perverse consequences." *Id.* And the government would then become wary of offering plea agreements if the defendant could evade his obligations so easily. *Id.* ("If a defendant can make a seemingly beneficial plea agreement and can then renege," the government would instead charge defendants "with all applicable crimes and see what sticks after the appeal." (internal quotation marks omitted)). The benefits of plea bargaining—efficiency and finality—would thus erode, as defendants seek to have their cake and eat it too. *See Blackledge v. Allison*, 431 U.S. 63, 71 (1977).

That is precisely what Goodall seeks to do. The government did not pursue many robbery and firearm charges and made a lenient sentencing recommendation in exchange for Goodall's plea. If Goodall had been charged

---

[5] Two other circuits have agreed to the general principle that a defendant cannot raise a constitutional challenge to a conviction if he waived his right to appeal or collaterally attack it. *United States v. Barnes*, 953 F.3d 383 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 438 (2020); *United States v. Lloyd*, 901 F.3d 111 (2d Cir. 2018).

with all possible crimes, Goodall's "crime of violence" argument would not even exist. And the government dropped one § 924(c) count, which would have added another 25-year mandatory sentence. Rather than accept the benefit of his bargain, Goodall seeks to parlay the plea agreement's leniency into reversible error. We decline the invitation.[6]

## CONCLUSION

We **DISMISS** Goodall's appeal as barred by the appellate waiver in his plea agreement.

---

[6] Defendant did not raise, and we do not consider, the applicability, if any, of an exception for a miscarriage of justice. We express no view on the viability of that exception in other circumstances.