16-4107(L)
*Cook v. United States*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of August, two thousand twenty-four.

Present:

DEBRA ANN LIVINGSTON,
   *Chief Judge,*
RAYMOND J. LOHIER, JR.,
RICHARD J. SULLIVAN,
JOSEPH F. BIANCO,
MICHAEL H. PARK,
WILLIAM J. NARDINI,
STEVEN J. MENASHI,
EUNICE C. LEE,
BETH ROBINSON,
MYRNA PÉREZ,
ALISON J. NATHAN,
SARAH A. L. MERRIAM,
MARIA ARAÚJO KAHN,
   *Circuit Judges.*

_____

Docket Nos. 16-4107(L), 19-3773(Con), 19-3790(Con), 19-3807(Con), 19-3813(Con), 19-3899(Con)

_____

DEREK COOK, CHAD EDWARDS, BRIAN LATULIPE, ANSON EDWARDS, BRYAN HERNE, KAIENTANORON L. SWAMP,

*Petitioners-Appellants,*

*v.*

UNITED STATES OF AMERICA

*Respondent-Appellee*.

For Petitioners-Appellants:         James P. Egan, Assistant Federal Public Defender, Office of the Federal Public Defender, Syracuse, NY.

For Respondent-Appellee:         Michael F. Perry, Carina H. Schoenberger, Assistant United States Attorneys, *for* Carla B. Freedman, United States Attorney for the Northern District of New York, Syracuse, NY.

Following disposition of the appeal in this case on October 16, 2023, an active judge of the Court requested a poll on whether to rehear the case *en banc*. A poll having been conducted and there being no majority favoring *en banc* review, rehearing *en banc* is hereby **DENIED**.

Raymond J. Lohier, Jr., *Circuit Judge*, joined by Myrna Pérez, *Circuit Judge*, concurs by opinion in the denial of rehearing *en banc*.

Richard J. Sullivan, *Circuit Judge*, joined by Debra Ann Livingston, *Chief Judge*, and Joseph F. Bianco, Michael H. Park, William J. Nardini, and Steven J. Menashi, *Circuit Judges*, concurs by opinion in the denial of rehearing *en banc*.

Alison J. Nathan, *Circuit Judge*, concurs by opinion in the denial of rehearing *en banc*.

Beth Robinson, *Circuit Judge*, joined by Eunice C. Lee and Sarah A. L. Merriam, *Circuit Judges*, dissents by opinion from the denial of rehearing *en banc*.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

RAYMOND J. LOHIER, JR., *Circuit Judge*, joined by MYRNA PÉREZ, *Circuit Judge*, concurring in the order denying rehearing in banc:

During the in banc poll, the key question before us was whether a collateral-attack waiver in a plea agreement is enforceable even if it results in a complete miscarriage of justice. For reasons I explain below, we should wait for a better case to resolve this important question. These consolidated cases present a set of complicating side-issues that will only obscure our answer.

First, there is the preliminary issue of mootness. The Government and the petitioners agree that the cases are neither constitutionally nor statutorily moot because of the continuing collateral consequences that flow from the petitioners' § 924(c) convictions and the fact that the petitioners were in custody at the time they filed their petitions. *See Nowakowski v. New York*, 835 F.3d 210, 226 (2d Cir. 2016) (Article III mootness); *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968) (statutory "in custody" requirement). I think the parties have it right, but proceeding in banc would have required that we grapple with this jurisdictional issue.

Second, the panel's decision recognizes miscarriage-of-justice exceptions to appeal and collateral attack waivers exist in certain circumstances. *See Cook v. United States*, 84 F.4th 118, 125 n.4 (2d Cir. 2023). I understand that this is cold

1

comfort to the petitioners, but the broader principles that recognize the exception in appropriate cases have already prevailed.

A thorny subsidiary issue in these cases introduces another complicating factor that would persist even if we were to say more about the exception. It is that the conduct to which the petitioners admitted would also support a conviction for drug trafficking under 21 U.S.C. §§ 846 and 841. Whether an alternative, valid conviction can support an appeal waiver and cure what might otherwise qualify as a miscarriage of justice under the federal habeas statute, 28 U.S.C. § 2255, is a question that will not exist in any future case where the invalidated conviction stands more or less alone as the target of the petitioner's attack.

Third, the panel decision says nothing about the impact of *United States v. Riggi*, in which we emphasized that "[a] violation of a fundamental right warrants voiding an appeal waiver," and that enforcing certain appellate waivers "may irreparably discredit the federal courts." 649 F.3d 143, 147–48 (2d Cir. 2011) (quotation marks omitted); *see also United States v. Lajeunesse*, 85 F.4th 679, 692–94 (2d Cir. 2023). The panel's decision does not rule out applying *Riggi* in future variations of the case before us.

Finally, I appreciate the views of some of my colleagues that the panel's approach to the collateral attack waiver in this case might be viewed as in conflict with *Bousley v. United States*, 523 U.S. 614, 618–19 (1998). But the argument based on *Bousley* was never raised by the parties before the District Court or to the panel (not even in the petitioners' petition for panel rehearing). This is not a surprise, as the petitioners' argument has always been that their collateral attack waivers were not knowing and voluntary. They have never argued that their underlying pleas were not knowing and voluntary such that *Bousley* might apply. We should be wary of plucking an issue for in banc review that was not raised by any party at any time. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020).

Let me end with some words of assurance. The question that my dissenting colleagues want answered today will almost certainly recur in the right case in due time. When that happens, we will be guided by precedent in *Bousley v. United States*, 523 U.S. 614 (1998), *United States v. Riggi*, 649 F.3d 143 (2d Cir. 2011), *United States v. Balde*, 943 F.3d 73 (2d Cir. 2019), and *United States v. Lajeunesse*, 85 F.4th 679 (2d Cir. 2023). And this Court might well consider the Fourth Circuit's approach in *United States v. McKinney*, 60 F.4th 188, 192–93 (4th

Cir. 2023), which applied a miscarriage-of-justice exception to invalidate an appeal waiver.

For these reasons I must respectfully concur in the denial of in banc review.

RICHARD J. SULLIVAN, *Circuit Judge*, joined by DEBRA ANN LIVINGSTON, *Chief Judge*, and JOSEPH F. BIANCO, MICHAEL H. PARK, WILLIAM J. NARDINI, and STEVEN J. MENASHI, *Circuit Judges*, concurring in the order denying rehearing en banc:[1]

This straightforward and narrow case is easily resolved for the reasons set forth in the unanimous panel opinion. I write separately only to respond to the arguments raised in the dissent from the denial of rehearing en banc. The dissent takes issue with the panel decision based on arguments and authority that the appellants themselves never raised or relied upon, either in their briefing to the panel or in their petition for panel rehearing. The party presentation principle alone precludes the judicial intervention that the dissent proposes. *See United States v. Sineneng-Smith*, 590 U.S. 371, 379–80 (2020). But even if the appellants had raised the arguments the dissent now raises for them, those arguments would have failed on the merits. I write to explain why.

## I.    Background

This case arose from the appellants' collateral attacks on their convictions under 18 U.S.C. § 924(c). In 2008, appellants conspired with a drug trafficker to rob a large quantity of marijuana and cash from another drug dealer's home. The appellants brought a gun with them to the robbery, a struggle ensued, and the

---

[1] Senior Circuit Judge Dennis Jacobs, who was a member of the three-judge panel in this case, has authorized me to say that he endorses this opinion.

target was fatally shot. Thereafter, the appellants each pleaded guilty to one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951, and one count of using, or aiding and abetting the use of, a firearm during and in relation to a crime of violence, which use resulted in the death of another person, in violation of 18 U.S.C. §§ 924(c) and (j).

In exchange for each appellant's guilty plea and agreement to "waive[] any and all rights . . . to appeal or collaterally attack his conviction and any sentence of imprisonment" below a certain number of months, the government agreed to bring no additional charges and stipulated to a base offense level from which the government would recommend certain downward adjustments. Cook App'x at 28; *see id.* at 24–25. As it turned out, the district court sentenced the appellants to terms well below the number of months set forth in their respective appeal and collateral attack waivers, with each appellant's sentence consisting of equal terms for the conspiracy and section 924(c) and (j) convictions, to be served concurrently.

Several years later, notwithstanding the appeal and collateral attack waivers contained in their plea agreements, the appellants brought petitions under 28 U.S.C. § 2255, arguing that their section 924(c) and (j) convictions – but not their Hobbs Act robbery convictions – should be vacated because (1) the residual clause

of section 924(c)(3)(B) is unconstitutionally vague, and (2) conspiracy to commit Hobbs Act robbery is not a crime of violence under the elements clause of section 924(c)(3)(A). In 2016, the district court denied Cook's petition, both on the merits and because it was barred by his collateral attack waiver. Thereafter, the Supreme Court issued its opinion in *United States v. Davis*, 588 U.S. 445, 470 (2019), holding that the residual clause of section 924(c)(3)(B) was indeed unconstitutionally vague. Following that decision, we held that conspiracy to commit Hobbs Act robbery was not a crime of violence under section 924(c), since it would not qualify as such under the still-standing elements clause. *See United States v. Barrett*, 937 F.3d 126, 127 (2d Cir. 2019), *abrogated on other grounds by Lora v. United States*, 599 U.S. 453 (2023). Nevertheless, the district court denied the remaining five appellants' petitions on the ground that each appellant had expressly given up his right to bring a collateral attack.

## II. The Appellants' Waivers Were Knowing and Voluntary and Extended to Future Changes in the Law Whether or Not Specifically Contemplated at the Time of Their Guilty Pleas

In pleading guilty, each appellant waived "any and all rights . . . to appeal or collaterally attack his conviction." Cook App'x at 28. This waiver was the product of a bargain. In exchange for consideration – namely, the government's agreement to forgo additional charges and make certain stipulations that

3

effectively capped their sentences – the appellants in turn stipulated that their admissions of guilt were final and that they would not seek to undo their guilty pleas and convictions in subsequent proceedings. Their waivers were comprehensive: the appellants gave up "any and all rights" of appeal or collateral attack.

We have long recognized that "[a] defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable," *Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016), and that such waivers must be enforced "even though the grounds for appeal arose after the plea agreement was entered into," *Garcia-Santos v. United States*, 273 F.3d 506, 509 (2d Cir. 2001). The decision to waive one's right to appeal or to collaterally attack a conviction involves, quite obviously, a tradeoff – with the waiver serving as the defendant's "bargaining chip." *United States v. Yemitan*, 70 F.3d 746, 748 (2d Cir. 1995). On the one hand, the defendant gains whatever consideration the government has offered for the waiver. *See Garcia-Santos*, 273 F.3d at 509 (describing benefits to defendant); *United States v. Gomez-Perez*, 215 F.3d 315, 318 (2d Cir. 2000) (same). On the other hand, the defendant forgoes any potential benefit from a subsequent change in law that might apply retroactively to his case.

4

That this decision sometimes turns out to be improvident – because, for example, a subsequent change in law materializes and creates what would have been a meritorious defense – does not mean the waiver was unknowing. A defendant's "inability to foresee that subsequently decided cases would create new appeal issues does not supply a basis for failing to enforce an appeal waiver." *United States v. Morgan*, 406 F.3d 135, 137 (2d Cir. 2005). "On the contrary, the possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements." *Id.*

Indeed, it is precisely because collateral attack waivers cover as-yet-unknown meritorious defenses and assertions of error that they have value to the government. "Defendants who appeal from sentences following plea agreements *always* point to unanticipated . . . developments." *United States v. Wenger*, 58 F.3d 280, 282 (7th Cir. 1995). "To say that a waiver of appeal is effective if and only if the defendant lacks grounds for appeal is to say that waivers will not be honored." *Id.* And to say that waivers will not be honored is to eliminate their "value as a bargaining chip in the hands of [future] defendants." *Yemitan*, 70 F.3d at 748.

As explained in the panel's unanimous decision, there are limited situations in which we have found appeal and collateral attack waivers to be unenforceable,

5

including: "'(1) where the waiver was not made knowingly, voluntarily, and competently; (2) where the sentence was based on constitutionally impermissible factors, such as ethnic, racial, or other prohibited biases; (3) where the government breached the agreement containing the waiver; (4) where the district court failed to enunciate any rationale for the defendant's sentence,' and (5) where the waiver 'was unsupported by consideration.'" *Cook v. United States*, 84 F.4th 118, 122 (2d Cir. 2023) (alterations and citations omitted) (first quoting *United States v. Burden*, 860 F.3d 45, 51 (2d Cir. 2017), then quoting *United States v. Lutchman*, 910 F.3d 33, 38 (2d Cir. 2018)). The panel concluded that none of these exceptions applied here and noted that subsequent changes in the law are not among the recognized exceptions to enforcement of an otherwise valid collateral attack waiver.

### III. *Balde* and *Bousley* Do Not Contradict the Panel's Reasoning

The dissent does not contend that the appellants here were somehow unaware that they were waiving "any and all rights" to appeal or collaterally attack their convictions. Instead, the dissent points out that the appellants *could* have brought their *Davis* challenges as ones based on Federal Rule of Criminal Procedure 11. *See* Dissent at 10–14. Specifically, the appellants could have argued that the district court violated Rule 11 when it failed to inform them that the residual clause of section 924(c)(3)(B) was unconstitutionally vague and that

6

Hobbs Act robbery conspiracy did not qualify as a crime of violence under the remaining elements clause. According to the dissent, Rule 11 challenges must be considered notwithstanding a collateral attack waiver, since the enforceability of the waiver turns on the merits of the Rule 11 challenge. *See United States v. Lloyd*, 901 F.3d 111, 115, 118–24 (2d Cir. 2018) (considering defendant's Rule 11 arguments before deciding enforceability of appeal waiver, and concluding that Rule 11 arguments did not require vacatur or otherwise void defendant's appeal waiver); *United States v. Balde*, 943 F.3d 73, 93–95 (2d Cir. 2019) (considering Rule 11 argument before deciding enforceability of appeal waiver, and concluding that Rule 11 error rendered waiver unenforceable).

In essence, the dissent criticizes the panel opinion for not recasting the appellants' *Davis* arguments as assertions of Rule 11 error. But the appellants were represented on appeal by competent counsel who did not even cite *Balde* or *Lloyd*. That was not for lack of familiarity with Rule 11. Three of the appellants made Rule 11 arguments that had nothing to do with *Davis* or section 924(c). *See Cook*, 84 F.4th at 122–24. Given that the appellants themselves did not conceive of their *Davis* challenges as assertions of Rule 11 error, the panel cannot be faulted for failing to reimagine the appellants' argument for them. Indeed, the panel would

likely have abused its discretion had it done so. *See Sineneng-Smith*, 590 U.S. at 375 (holding that Ninth Circuit panel's "drastic[]" departure from party presentation principle was abuse of discretion warranting vacatur of panel's judgment).

But even if the appellants had argued that the district court erred under Rule 11 by failing to tell them that section 924(c)(3)(B) was unconstitutionally vague, that argument still would have failed. In fact, the dissent does not even contend that its hypothetical Rule 11 argument would have succeeded in this case – which makes this exchange of opinions perplexing. *See* Dissent at 4 (describing panel's holding as "generally unobjectionable"); *id.* at 18 n.6 (declining to argue that appellants would have prevailed even under dissent's theories).

As a threshold matter, neither *Lloyd* nor *Balde* stands for the proposition that a defendant can evade his collateral attack waiver simply by laundering his challenge through Rule 11. This is hardly surprising, since we have previously rejected the argument that a post-plea change in law retroactively creates Rule 11 error that voids an appeal waiver. *See United States v. Roque*, 421 F.3d 118, 121–22 (2d Cir. 2005). In *Roque*, the defendant relied on the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005) – which rendered the Sentencing Guidelines advisory – to argue that "his mistaken belief, shared by the government

8

and the District Court, that the Guidelines were mandatory rather than advisory, limited his capacity to freely and intelligently enter into the [plea] bargain and voids the agreement for mutual mistake." *Roque*, 421 F.3d at 122. We disagreed, since there was no evidence to suggest that the defendant "was ignorant of his legal and constitutional rights *in their then-present state*." *Id.* (emphasis added). We noted that, while "ignorance of *existing* rights may void a plea agreement and a waiver of appellate rights," the defendant's ignorance of future changes in law was irrelevant to whether his "plea and waiver were . . . knowing and intelligent." *Id.* (emphasis added); *see also Morgan*, 406 F.3d at 137 & n.2. We therefore enforced the defendant's appeal waiver.

Neither *Lloyd* nor *Balde* purported to disturb *Roque*. *Lloyd* involved deficiencies in the district court's plea colloquy that were unrelated to any subsequent change in law. *See Lloyd*, 901 F.3d at 120–24 (concluding that district court's failure to explain elements of offense or ask defendant to describe offense conduct in detail was error, but not error that affected defendant's substantial rights). And while the panel in *Balde* concluded that a defendant's Rule 11 challenge based on a post-plea change in law – specifically, *Rehaif v. United States*, 588 U.S. 225 (2019) – *did* render the defendant's appeal waiver unenforceable, the

9

*Balde* panel did not even acknowledge, much less attempt to distinguish, *Roque.* In any event, the case here is readily distinguishable from *Balde*, which involved a challenge brought on direct appeal, not collateral attack; arose from the Supreme Court's decision in *Rehaif*, not *Davis*; and involved a waiver that was not comprehensive but rather "preserved [the defendant's] right to appeal the district court's denial of his motion [to dismiss the indictment]." *Balde*, 943 F.3d at 79. Given the appellants' failure to even cite *Balde*, we are not obliged to reconcile that case and *Roque*.

Moreover, even if *Roque* did not foreclose a Rule 11 challenge based on *Davis*, the *existence* of a collateral attack waiver (whether enforceable or not) would surely be relevant to the merits of the Rule 11 challenge. A defendant who enters a guilty plea in conjunction with a comprehensive collateral attack waiver (unlike the waiver in *Balde*) is pleading guilty with the expectation that his conviction will be binding on him no matter what future developments in the law bring. *See Morgan*, 406 F.3d at 137. It would be strange, then, to conclude that a district court commits reversible Rule 11 error when it fails to anticipate the myriad not-yet-existent challenges that the defendant might conceivably be giving up by pleading guilty. While the dissent insists that Rule 11 challenges are threshold arguments

10

that must be considered before a collateral attack waiver is enforced, that order of operations simply means we cannot presume the waiver's enforceability when evaluating the threshold Rule 11 challenge. It does not follow that our review of the merits of the Rule 11 challenge must be blind to the defendant's *intention* to be bound by an enforceable collateral attack waiver. And the defendant's intention to be so bound undermines any after-the-fact assertion that his plea was unknowing.

In any case, the appellants' hypothetical Rule 11 challenges would have failed for any number of additional reasons. For starters, the appellants did not raise Rule 11 arguments based on *Davis* when pleading guilty, on direct appeal, or in their section 2255 petitions to the district court. The appellants' new Rule 11 arguments would therefore be procedurally defaulted, if not outright time barred. *See Bousley v. United States*, 523 U.S. 614, 621 (1998) ("[T]he voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review."); 28 U.S.C. § 2255(f). And even if the appellants' arguments somehow received plain error review, the appellants would not be able to meet their burden of showing (1) that the error affected their substantial rights – *i.e.*, that "there is a reasonable probability that [they] would not have pled guilty"

11

to section 924(c) and (j) offenses had the error not occurred – and (2) that the "error had a serious effect on the fairness, integrity[,] or public reputation of judicial proceedings." *Greer v. United States*, 593 U.S. 503, 508 (2021) (internal quotation marks omitted). The record is clear that the appellants could have been convicted of their section 924(c) and (j) offenses on the basis of multiple different predicates besides conspiracy to commit Hobbs Act robbery, *see Cook*, 84 F.4th at 125 n.4, and nothing in the record suggests that the appellants' motivations to plead guilty to limit their criminal exposure would have been any different had *Davis* been decided before their pleas, *see United States v. Dussard*, 967 F.3d 149, 158 (2d Cir. 2020).

It bears noting that section "924(c) does not require the defendant to be convicted of (or even charged with) the predicate crime, so long as there is legally sufficient proof that the predicate crime was, in fact, committed." *Johnson v. United States*, 779 F.3d 125, 129 (2d Cir. 2015); *see also Tavarez v. United States*, 81 F.4th 234, 241 (2d Cir. 2023). This is precisely the point we relied on in *Dussard*, where we concluded that "the coconspirators' plan to steal 12 kilograms of cocaine [at gunpoint] from the targeted drug dealer" was enough to support a conviction under section 924(c) as a narcotics offense – even though the predicate offense to

12

which Dussard had pleaded guilty was conspiracy to commit Hobbs Act robbery. 967 F.3d at 156–57. On facts remarkably similar to those here, we determined that "Dussard's conviction . . . on the basis of firearm possession during and in relation to a Hobbs Act conspiracy" did not affect his substantial rights since "Dussard was motivated – and the government was willing – to enter into a plea agreement that would allow him to plead guilty to a [section] 924(c)(1)(A)(i) offense." *Id.* at 157–58. We reasoned that, "[h]ad he and the government anticipated the decision in *Davis*, this could easily have been accomplished – with no difference in the offense of conviction or in the punishment – by simply having the . . . [plea agreement] refer instead to the drug trafficking crime" rather than to Hobbs Act robbery conspiracy. *Id.* at 158.

Given that we are analyzing a hypothetical argument that no one besides the dissent has raised – and which even the dissent seems to acknowledge would not have prevailed in this case – it is hardly necessary to belabor this point. But the fact that the dissent's reading of *Balde* would require us to conduct a complete merits analysis of the appellants' *Davis* challenges (repackaged as Rule 11 challenges), just to determine whether the appellants' collateral attack waivers bar

13

them from raising *Davis* challenges, indicates that something is wrong with the dissent's approach.

Separately, the dissent argues that the Supreme Court's decision in *Bousley* establishes that the appellants' collateral attack waivers are unenforceable. But *Bousley* did not involve an appeal or collateral attack waiver at all. Instead, the case turned on whether the petitioner had procedurally defaulted his section 2255 challenge to his section 924(c) conviction after the Supreme Court held that "using" a firearm for purposes of section 924(c) meant "'active employment of the firearm,'" not mere possession. *Bousley*, 523 U.S. at 616 (quoting *Bailey v. United States*, 516 U.S. 137, 144 (1995)). Although Bousley relied on this post-plea precedent to argue that the district court had "misinformed him as to the elements of a [section] 924(c)(1) offense," *id.* at 618, the Supreme Court did not vacate Bousley's conviction or even consider his argument on the merits. It merely concluded that Bousley's procedural default barred his claim for relief, which could be advanced only if he could demonstrate that he met one of the exceptions to such default. The Supreme Court ruled out one of those exceptions and remanded the case for consideration of the other. Consideration of the exceptions to procedural default was necessary only because the Supreme Court did *not* view

14

the error that Bousley asserted to be unwaivable. To the contrary, the Supreme Court explicitly noted that "significant procedural hurdles" would have to be overcome before Bousley's claim could be considered on the merits. *Id.* at 621.

Since *Bousley*, the Supreme Court has confirmed that a challenge based on a post-plea judicial interpretation of an element of the crime of conviction is not an assertion of structural error and can be forfeited. *See Greer*, 593 U.S. at 507, 513–14. In *Greer*, the Supreme Court deemed as forfeited – and therefore subject to plain error review – a defendant's direct appeal of his guilty plea based on the Supreme Court's clarification in *Rehaif* that knowledge of one's status as a felon is an element of a section 922(g) felon-in-possession offense. *See id.* at 507. Both *Greer* and *Bousley* make clear that challenges based on post-plea changes in law are subject to forfeiture. Nothing in either case suggests that such challenges are not also subject to appeal or collateral attack waiver or that recasting such challenges as a Rule 11 violation constitutes a miracle cure for otherwise procedurally barred claims.

In sum, the dissent's assertion that "the panel's legal analysis clashes with the Supreme Court's and this Circuit's law" is wrong. Dissent at 1. As explained above, there is no conflict between the panel decision and *Balde*. Nor does the

15

panel decision conflict with *Bousley*. Given that the vast majority of our sister

circuits have concluded that a collateral attack waiver is enforceable to bar a *Davis*

challenge, and given that the Supreme Court has not resolved the heavily one-

sided split, it can hardly be said that the panel opinion "directly conflicts with the

Supreme Court's . . . binding precedent." Dissent at 4; *see King v. United States*, 41

F.4th 1363, 1367–70 (11th Cir. 2022); *Portis v. United States*, 33 F.4th 331, 334–39 (6th

Cir. 2022); *United States v. Goodall*, 21 F.4th 555, 561–65 (9th Cir. 2021); *Oliver v.*

*United States*, 951 F.3d 841, 845–48 (7th Cir. 2020).

## IV. The Miscarriage of Justice Framework Is the Appropriate Safety Valve for Collateral Attack Waivers

Footnote four of the *Cook* panel's opinion acknowledged the possibility that

a collateral attack waiver may be unenforceable in the event that a defendant's

conviction and punishment are for "an act that the law did not make criminal."

*Cook*, 84 F.4th at 125 n.4 (alterations omitted) (quoting *Davis v. United States*, 417

U.S. 333, 346 (1974)). As the Supreme Court recognized in *Davis* – a case that did

not involve an appeal or collateral attack waiver – "[t]here can be no room for

doubt that such a circumstance inherently results in a complete miscarriage of

justice and presents exceptional circumstances that justify collateral relief under

16

s[ection] 2255." *Davis*, 417 U.S. at 346–47 (alterations and internal quotation marks omitted).

The panel concluded that this case did not present an occasion to recognize such a miscarriage of justice exception to the enforceability of collateral attack waivers. But we did acknowledge that a future case may arise where the interests of justice require an otherwise enforceable collateral attack waiver to be set aside. We remain convinced that the miscarriage of justice framework – which involves asking the straightforward question of whether a defendant has been convicted and imprisoned for conduct that the law does not make criminal – provides the appropriate safety-valve by which certain defendants, in limited and extraordinary circumstances, can be released from their otherwise enforceable collateral attack waivers. But this is clearly *not* that case, since appellants' conduct is unquestionably criminal, even after the Supreme Court's 2019 decision in *Davis*. Simply put, the denial of appellants' request for a *Davis*-generated windfall after they had already received the benefits of their negotiated pleas in no way constitutes a miscarriage of justice, and hardly warrants en banc review.

## V.     Conclusion

For the foregoing reasons, I concur in the Court's order denying en banc rehearing of this case.

NATHAN, *Circuit Judge*, concurring in the order denying rehearing *en banc*:

I originally voted to rehear these consolidated cases *en banc* because the panel opinion appeared to reach a holding contrary to Supreme Court and Second Circuit precedent on an issue of great importance in our criminal justice system. My colleagues who join the other separate writings today all agree that the panel opinion did not consider or resolve any argument under *Bousley v. United States*, 523 U.S. 614 (1998), *United States v. Balde*, 943 F.3d 73 (2d Cir. 2019), and related caselaw, the issue that concerns me. Given this, I acknowledge that rehearing these cases *en banc* over an issue the panel did not reach would not be warranted and so I now concur in the denial of rehearing *en banc*. I write briefly to explain why I originally voted to rehear the case.

As I see it, these consolidated cases concern a relatively simple, yet significant, question: Say you agree to plead guilty to a crime, but it later turns out that neither you, nor your counsel, nor the court itself accurately understood the law under which you were charged. What you have pled to, in fact, is not and never was a crime. Can an appeal or collateral-attack waiver in your plea agreement still prevent you from challenging that conviction, keeping you in prison for a non-existent crime? As Judge Robinson notes, multiple circuits have

split on this question.[1]  *See* Robinson, J., dissenting op. at 16-17.  If your case arises in the Fourth Circuit, your waiver will not prevent you from raising such a challenge.  In the Sixth, Ninth, or Eleventh Circuits, despite your legal innocence, you would not be so fortunate.  In the Seventh and—after the panel's decision—in this Circuit, the answer is perhaps not so clear.

But the right answer, under Supreme Court and Second Circuit precedent, is clear.  And it is clearly no.  A plea in which the defendant was misinformed as to the true nature of the offense is not a knowing and voluntary plea.  And an appeal or collateral-attack waiver in a plea agreement that was not knowing and voluntary does not bind the defendant.

Our precedent establishes that "if we are not assured that a defendant's plea was voluntary and knowing, we will not enforce any waivers provided in the related plea agreement."  *United States v. Lloyd*, 901 F.3d 111, 118 (2d Cir. 2018); *see also United States v. Haynes*, 412 F.3d 37, 39 (2d Cir. 2005) ("We reiterate that a defendant may of course seek relief from the underlying plea where the plea was not knowing and voluntary[.]"); *cf. United States v. Difeaux*, 163 F.3d 725, 728 (2d

---

[1] *See United States v. McKinney*, 60 F.4th 188, 191–93 (4th Cir. 2023); *King v. United States*, 41 F.4th 1363, 1368 (11th Cir. 2022); *Portis v. United States*, 33 F.4th 331, 336-38 (6th Cir. 2022); *United States v. Goodall*, 21 F.4th 555, 562 (9th Cir. 2021); *Oliver v. United States*, 951 F.3d 841, 847 (7th Cir. 2020).

Cir. 1998) ("A defendant who *knowingly and voluntarily* enters into a plea agreement containing a waiver of appeal rights . . . is bound by the waiver provision." (emphasis added)).

In short, under our Circuit's law, if Petitioners' pleas were not knowing and voluntary, then their collateral-attack waivers cannot be enforced against them. And, as Judge Robinson demonstrates, *see* Robinson, J., dissenting op. at 6-14, Petitioners' pleas were not knowing and voluntary because they were misinformed as to the very nature of the offense to which they pled. *See Bousley*, 523 U.S. at 618-19; *Balde*, 943 F.3d at 93-94. The syllogism is not hard to complete: Petitioners' collateral-attack waivers are therefore unenforceable.

The panel's opinion seemingly reached a contrary conclusion, which is why I voted to rehear these cases *en banc*. And the fact that observing the problems with the opinion required reasoning that differs from the parties' exact arguments or consulting cases not cited by the parties does not, as Judge Sullivan contends, mean that those who sought *en banc* review would contravene the party presentation principle. *See* Sullivan, J., concurring op. at 1. Indeed, the panel itself characterized the arguments raised by Petitioners as a contention that "their pleas [were] involuntary and unknowing," *Cook v. United States*, 84 F.4th 118, 122 (2d

Cir. 2023). It certainly would not have abused its discretion by evaluating a different theory for why that is the case. We are "not hidebound by the precise arguments of counsel," *United States v. Sineneng-Smith*, 590 U.S. 371, 380 (2020), and, "[w]hen an issue or claim is properly before the court," we are not "limited to the particular legal theories advanced by the parties," *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991); *see also Snider v. Melindez*, 199 F.3d 108, 114 (2d Cir. 1999).

In any event, as a result of the *en banc* poll, it is now clear that the underlying opinion did not consider or resolve the applicability of *Bousley*, *Balde*, and related precedents to appeal or collateral-attack waivers in circumstances like these. Given this, I now agree that *en banc* review is not warranted.

No. 16-4107(L)
*Cook v. United States*

BETH ROBINSON, *Circuit Judge*, joined by EUNICE C. LEE and SARAH A. L. MERRIAM, *Circuit Judges*, dissenting from the order denying rehearing *en banc*:

I don't write to object to the panel's actual narrow holding—found in a footnote at the end of its opinion. Nor do I argue that the panel should have granted the parties relief they did not seek. But I'm compelled to dissent from the denial of rehearing *en banc* because the panel's opinion includes *assertions presented as precedential rule statements* that sweep far more broadly than the panel's actual holding, and squarely conflict with binding precedent of the Supreme Court and this Court. Far from urging the panel to reach questions never raised by the parties, I advocate for *en banc* review because, in my view, the panel's analysis purports to answer questions neither raised by the parties nor essential to the panel's ultimate ruling, and its answers to those questions conflict with binding law. A precedential opinion of this Court should follow binding precedent even if neither party has cited that precedent. Because the opinion sows confusion in our Circuit's law and "involves a question of exceptional importance," *en banc* review is warranted. Fed. R. App. P. 35(a)(2).

## 1. The Limits of the Panel Opinion's Holding

The opinion's actual holding is narrow: A collateral-attack waiver bars a challenge to a § 924(c) conviction predicated on an act that is not a valid "crime of

1

violence" if the record establishes a different and valid predicate for the § 924(c) conviction. *See Cook v. United States*, 84 F.4th 118, 125 & n.4 (2d Cir. 2023). Two limitations on the scope of the panel's holding constrain its reach. First, in a footnote, the panel makes clear that it does not purport to decide whether, in the absence of an alternative valid predicate, the collateral-attack waiver would be enforceable. *See id.* (explaining that this case does not require the Court to decide "whether a collateral-attack waiver would be unenforceable in the event of a 'complete miscarriage of justice,'" and identifying alternative predicate acts in the record that could support a § 924(c) conviction (citation omitted)).

Thus the opinion does not purport to decide whether a plea agreement's collateral-attack waiver is enforceable where the § 924(c) conviction is unsupported by *any* valid predicate act. Whether, in this Circuit, enforcing the waiver in such circumstances would "irreparably discredit the federal courts," *United States v. Riggi*, 649 F.3d 143, 148 (2d Cir. 2011) (internal citation omitted) (alteration adopted), or would otherwise impermissibly effectuate a manifest injustice, remains an open question. *See United States v. Lajeunesse*, 85 F.4th 679, 692–94 (2d Cir. 2023) (declining to enforce an appeal waiver because the district court's failure to allow allocution during sentencing implicated serious public policy concerns). That distinguishes the panel's opinion from those of other

circuits that have addressed the broader question. *See Cook*, 84 F.4th at 124–25 (discussing sister circuit precedent).

Second, as Judge Sullivan's concurrence in the denial of rehearing *en banc* ("Panel Concurrence")[1] emphasizes, *see above* at 7–8, the panel opinion does not purport to address whether the appeal waiver is unenforceable on the basis that the petitioners were misinformed about the "true nature" of the charge to which they pled guilty, rendering their underlying pleas unknowing and involuntary. *Bousley v. United States*, 523 U.S. 614, 619 (1998). That makes sense; the petitioners did not expressly argue that their guilty pleas to the § 924(c) charges were involuntary because they were misinformed about whether conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951, is a valid crime-of-violence predicate under § 924(c).[2] Instead, in evaluating the enforceability of the appeal waivers, the panel treated the underlying pleas as if they were knowing and

---

[1] I refer to Judge Sullivan's concurrence as the "Panel Concurrence," because the members of the original panel are among those who have joined or endorsed it. *See above*, Panel Concurrence, at 1 & n.1.

[2] The argument that their pleas should be vacated because they did not know that their conduct did not violate the offense of conviction is arguably *implicit* in Petitioners' argument on the merits of their appeal. In particular, Petitioners argue that the collateral-attack waiver should not "preclude the ordinary remedy when someone has been convicted of a non-existent offense." *See, e.g.*, Latulipe Brief at 6. Vacating a conviction based on the fact that the plea was unknowing or involuntary *is* an "ordinary remedy" when a defendant unwittingly pleads guilty based on conduct that doesn't actually violate the offense of conviction. *See, e.g.*, *United States v. Balde*, 943 F.3d 73, 88, 98 (2d Cir. 2019) (vacating a conviction secured by a guilty plea that was not knowing and voluntary because the defendant was not informed of "the true nature of the charge" against him).

voluntary. *See Cook*, 84 F.4th at 125 (concluding that "where the waiver itself is clear, unambiguous, *knowingly and voluntarily entered*, and supported by consideration . . . the terms of the plea agreements must be enforced" (emphasis added)). Because the opinion did not focus on this argument, much of its analysis is squarely in conflict with binding law, as set forth more fully below.

## 2. The Confusion Sown by the Panel's Opinion

Notwithstanding its narrow and generally unobjectionable holding, the backbone of the *analysis* in the opinion directly conflicts with the Supreme Court's and this Circuit's binding precedent. It would be tempting to dismiss the problematic language as *dicta*, and in a technical sense, it is. But the objectionable reasoning permeates this precedential opinion, which presents as law propositions that conflict with binding precedent. As a result, the opinion muddles this Circuit's law.

### *A. Binding Precedent*

The panel's opinion rests heavily on the proposition that "ignorance of future rights is unavoidable and not a basis for avoiding a plea agreement." *Cook*, 84 F.4th at 125 (quoting *United States v. Haynes*, 412 F.3d 37, 39 (2d Cir. 2005)). This

assertion, in the right context, accurately reflects the law.  But this isn't the right context.

As the opinion notes, we have enforced collateral-attack waivers in the face of "evolving judicial precedent" because "the possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements."  *Id.* at 124 (quoting *United States v. Morgan*, 406 F.3d 135, 137 & n.3 (2d Cir. 2005)).

But the Supreme Court, and this Court, have rejected that approach in *cases like this* in which post-plea binding precedent establishes that a defendant pled guilty under a misapprehension of the essential elements of the charge.  In those cases, the guilty plea cannot be considered knowing and voluntary—and any associated waiver of the right to appeal or collaterally challenge the resulting conviction is unenforceable.

Start with the Supreme Court.  Its law is well established that a defendant cannot enter a knowing and voluntary plea "unless the defendant received 'real notice of the true nature of the charge,'" which the Court has described as "the first and most universally recognized requirement of due process."  *Henderson v. Morgan*, 426 U.S. 637, 645 (1976) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)) (affirming vacatur of state conviction pursuant to a guilty plea where the

5

defendant had not been informed that intent to cause death was an element of second-degree murder). There is no exception to this principle when a defendant's ignorance of the "true nature of the charge" is only revealed by post-plea clarifying caselaw. *Id.* at 645.

The Supreme Court made this clear in *Bousley*, which is closely analogous to this case. 523 U.S. at 616–17. Bousley pled guilty to drug possession with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and to using a firearm "during and in relation to a drug trafficking crime," in violation of 18 U.S.C. § 924(c). *Id.* at 616. Several years after his conviction became final, Bousley filed a habeas petition challenging the factual basis for his guilty plea on the ground that "neither the 'evidence' nor the 'plea allocution' showed a 'connection between the firearms in the bedroom of the house, and the garage, where the drug trafficking occurred.'" *Id.* at 617 (citations omitted). The district court dismissed Bousley's petition, and he appealed to the Eighth Circuit. *Id.* at 617. While his case was pending in the court of appeals, the Supreme Court held in *Bailey v. United States* that mere possession of a firearm was insufficient to support a conviction for "use" of a firearm under § 924(c)(1); rather, the statute required "active employment of the firearm," such as "brandishing, displaying, bartering, striking with, and, most obviously, firing or attempting to fire" the weapon. 516 U.S. 137, 143, 148 (1995).

6

Nevertheless, the Eighth Circuit affirmed the district court's dismissal of Bousley's petition.

On *certiorari* review, the Supreme Court began with the well-established principles that a plea of guilty is constitutionally valid only to the extent it is "voluntary" and "intelligent," and is only "voluntary" and "intelligent" if the defendant first receives "real notice of the true nature of the charge" against the defendant. *Bousley*, 523 U.S. at 618 (citations omitted). It explained:

> [P]etitioner contends that the record reveals that neither he, nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged. Were this contention proved, petitioner's plea would be, contrary to the view expressed by the Court of Appeals, constitutionally invalid.

*Id.* at 618–19. Significantly, the Court's analysis was not grounded in the procedural requirements of Rule 11 of the Federal Rules of Criminal Procedure; it was rooted in due process under the United States Constitution. *See id.* at 618 (explaining that receiving "real notice of the true nature of [a] charge" is *the first and most universally recognized* requirement of due process" (emphasis added) (citation omitted)).

The Court distinguished the *Bousley* scenario from cases like *Brady v. United States*, 397 U.S. 742 (1970), in which subsequent legal developments revealed that, at the time of a plea, a defendant had not correctly assessed "every relevant factor

7

entering into [the] decision" to plead guilty, such as the strength of the government's evidence or potential penalties. *Bousley*, 523 U.S. at 619 (quoting *Brady*, 397 U.S. at 757). In *Bousley*, the defendant was not just misinformed about some factor bearing on his assessment of the pros and cons of a guilty plea; he asserted that "he was misinformed as to the *true nature* of the charge against him." *Id.* at 619 (emphasis added).

This distinction is critical. The *Cook* petitioners clearly fall in the *Bousley* category insofar as they were misinformed as to the meaning of a critical element of the charge to which they pled guilty (*i.e.*, the meaning of "crime of violence"). But the panel's reasoning draws instead on the distinct *Brady* line of cases. *See Cook*, 84 F.4th at 124–25. In *United States v. Morgan*, we cited *Brady* for the proposition that "[a] voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." 406 F.3d at 137 (citation omitted). And in *Sanford v. United States*, which involved post-plea caselaw implicating the applicable Sentencing Guidelines calculation, we drew from the same lineage. *See* 841 F.3d 578, 580 (2d Cir. 2016) (citing precedent that relied on *Morgan* for the proposition that "the possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea

agreements"). *See also United States v. Roque*, 421 F.3d 118, 121 (2d Cir. 2005) (rejecting claim that guilty plea was unknowing or involuntary where, post-plea, the Supreme Court held in *United States v. Booker*, 543 U.S. 220 (2005), that the Guidelines sentence calculation pursuant to which Roque pled guilty was not mandatory).

The situation here does not involve a subsequent evolution in the law that merely undermines the sentence calculation or other considerations that led the *Cook* petitioners to plead guilty; it involves clarification that the conduct to which they admitted did not violate the statute of conviction. *Bousley* is squarely on point and cannot be meaningfully distinguished.[3]

Importantly, *this* Court has confirmed that this principle applies *even when a defendant's plea agreement includes an express appeal or collateral-attack waiver*. We

---

[3] Nor has the Supreme Court overruled or otherwise dialed back its *Bousley* holding. *Greer v. United States*, 593 U.S. 503 (2021), cited in the Panel Concurrence, *see above* at 15, does not even mention *Bousley*, let alone overrule it. And *Greer* is not on all fours with *Bousley*. The defendants in *Greer* were not convicted based on conduct that did not in fact constitute a criminal offense. In *Greer*, defendant Gary challenged his conviction of a felon-in-possession offense on the basis that the court failed to advise him of the *mens rea* element of the charge—that a jury would have to find that he *knew* he was a convicted felon at the time of his possession. *See* 593 U.S. at 507. The Court concluded that the instructional omission *was* error, and that it was plain. *See id*. at 508. (The Court reached that conclusion even though the Supreme Court had not decided *Rehaif v. United States*, 588 U.S. 225 (2019), the case identifying the *mens rea* element for the felon-in-

decided that question in *United States v. Balde*, 943 F.3d 73, 93–94 (2d Cir. 2019).

*Balde* involved a defendant who pled guilty to unlawful possession of a firearm by a noncitizen who "is illegally or unlawfully in the United States," in violation of 18 U.S.C. § 922(g)(5)(A) and § 924(a)(2). *Id.* at 77. Within days of this Court's decision affirming Balde's conviction, the Supreme Court decided *Rehaif v. United States*, holding that in order to prove a charge under that statutory framework, the government had to prove that the defendant was *knowingly* "illegally or unlawfully in the United States" when possessing the firearm. 588 U.S. 225, 235 (2019). Balde then sought rehearing on the ground that the guilty plea was accepted in error, both because he was not advised of the knowledge requirement later announced in *Rehaif*, and because the record contained no factual basis to support that element of the crime. *Balde*, 943 F.3d at 78. In response, the government argued that by pleading guilty, Balde waived any argument that he lacked the requisite knowledge. *Id.* at 93. Importantly, the government

possession charges, until after Gary's guilty plea.). Considering the prejudice prong in its plain error review, the Court concluded that Gary had failed to show that, had he been properly instructed, there was a reasonable probability that he would not have pled guilty. *Id.* at 509. He had been convicted of multiple felonies, and never disputed that fact. *Id.* And he made no argument or representation on appeal that he had evidence that he did not know he was a felon when he possessed the firearms. *Id.* at 509–10. Thus, *Greer* is not a case in which a defendant unwittingly pled guilty and was convicted for conduct which did not actually constitute a violation of the offense of conviction based on misadvice—albeit understandable misadvice—as to the elements of the crime of conviction.

10

emphasized that the explicit appeal waiver in Balde's plea agreement prevented him from raising his *Rehaif*-based argument on rehearing. *Id.*

We rejected the government's contention, noting, "The government's waiver argument . . . necessarily assumes a valid plea that was knowingly and intelligently entered in compliance with the requirements of Rule 11 of the Federal Rules of Criminal Procedure." *Id.* We recognized that an appeal waiver in a plea agreement "does not bar challenges to the process leading to the plea . . . [including] those asserting that the district court failed to comply with the important strictures of Rule 11." *Id.* (quoting *United States v. Lloyd*, 901 F.3d 111, 118 (2d Cir. 2018)). And we cited prior decisions in which this Court concluded that an appeal waiver was not enforceable where the district court failed to explain to the defendants "the elements of the crimes" to which they were pleading guilty. *Balde*, 943 F.3d at 93–94 (citing *Lloyd*, 901 F.3d at 121; *United States v. Prado*, 933 F.3d 121, 153 (2d Cir. 2019)).

The fact that the deficiency in Balde's plea became apparent only after the Supreme Court's *Rehaif* decision did not change the analysis:

> Because of the Supreme Court's intervening decision in *Rehaif*, Balde's plea is now similarly deficient under Rule 11. That, of course, was through no fault of the district court: the court was merely applying what had long been the law of the circuit in requiring knowledge only of the possession of the firearm. But in interpreting the statute,

11

> *Rehaif* instructs us about what § 922(g)(5)(A) has always meant . . . . In evaluating Balde's claims of error, therefore, we must look to the law as clarified by the Supreme Court in *Rehaif*.

*Balde*, 943 F.3d at 94.

Because Balde was not informed about the requisite standard of knowledge, we concluded that "he was not properly informed as to the 'nature of each charge to which he was pleading' guilty." *Id.* (quoting Fed. R. Crim. P. 11(b)(1)(G)) (alteration adopted). We also concluded that the record did not establish the requisite factual basis to support the state-of-mind element of the charge against Balde. *Id.* at 95. In such circumstances, we said, "it is hard to imagine how a defendant's plea could be knowing and voluntary." *Id.* at 95 (citation omitted). Closing the loop, we stated: "We therefore conclude that Balde has not waived his ability to attack his plea under *Rehaif*, either by pleading guilty generally *or by agreeing to an appeal waiver provision*." *Id.* (emphasis added).

That makes sense. We have long recognized that an appeal waiver "does not . . . act as a waiver against an appeal on the basis that the plea *itself*, including the waiver, was not intelligent or voluntary." *Roque*, 421 F.3d at 121 (emphasis added). And it would be incongruous to suggest otherwise. We interpret contracts, including plea agreements, "as a whole." *United States v. Hamdi*, 432 F.3d 115, 123 (2d Cir. 2005) (citation omitted). A collateral-attack waiver is one

provision in a comprehensive plea agreement, not a freestanding contract independent of the plea deal as a whole. If the decision to enter into the plea agreement isn't knowing and voluntary, then the collateral-attack waiver falls with the rest of the agreement.

In short, our Circuit's law clearly provides that when a subsequent binding court decision clarifies the elements of a crime in a way that undermines the knowing and voluntary nature of a defendant's plea of guilty to that crime, neither the waiver implicit in the guilty plea, *nor any express appeal or collateral-attack waiver*, is enforceable to bar a challenge to the defendant's conviction.[4] This law is not grounded solely in the procedural requirements of Rule 11; it is rooted in the Constitution. *See McCarthy v. United States*, 394 U.S. 459, 465 (1969) (recognizing that Rule 11, while not constitutionally mandated, "is designed to assist the district judge in making the *constitutionally required* determination that a defendant's

---

[4] Although the Panel Concurrence identifies various factual or procedural differences between this case and *Balde*—e.g., *Balde* "arose from the Supreme Court's decision in *Rehaif*, not *Davis*"—it offers no basis for ascribing legal significance to those differences. *See above* at 10. In *United States v. Davis*, the Supreme Court concluded that the residual clause in the definition of crime of violence in 18 U.S.C. § 924(c)(3)(B) was unconstitutionally vague. 588 U.S. 445, 470 (2019). As a consequence of this holding, this Court subsequently held that conspiracy to commit Hobbs Act robbery is not a valid predicate "crime of violence" for a § 924(c) conviction. *United States v. Barrett*, 937 F.3d 126, 127 (2d Cir. 2019), *abrogated on other grounds by Lora v. United States*, 599 U.S. 453 (2023). Thus, if anything, a *Davis* error leading to a conviction based on acts that are not in fact unlawful is *more* concerning than a *Rehaif* error that, for the reasons identified in *Greer*, rarely leads to such a wrongful conviction. *See Greer*, 593 U.S. at 508 ("Felony status is simply not the kind of thing that one forgets." (citation omitted)).

guilty plea is truly voluntary" (emphasis added)); *see also United States v. Maher*,

108 F.3d 1513, 1520 (2d Cir. 1997) (same).

### B.  The Panel's Opinion

If the panel's opinion merely had bits of stray language in tension with these

principles, *en banc* review might not be warranted.  Its core holding, embodied

primarily in a footnote at the end of the decision, is compatible with our

established law on these points.  But, presumably because the panel was not

focused on the *Balde/Bousley* issue given the petitioners' arguments on appeal,

most, if not all, of the opinion's above-the-line discussion of the enforceability of

the collateral-attack waiver flies in the face of these precedents.

For example, the summary statement in the opinion's introductory

paragraph states: "Because subsequent changes in the law do not allow Petitioners

to back out of their valid agreements with the government, the waivers are

enforceable."  *Cook*, 84 F.4th at 120.  For the reasons set forth above, this assertion,

while true in other contexts, has no purchase here.  Binding precedent from this

Court and the Supreme Court holds that in a case like this, clarifications of the

law—like the Supreme Court's decisions in *Johnson* and *Davis* striking as

unconstitutionally vague the residual clauses in statutory definitions of "crimes of

14

violence"—can very well render a guilty plea unknowing and involuntary and thus any appeal or collateral-attack waiver unenforceable.[5]

Likewise, the entire section captioned, "Even in the Face of Evolving Judicial Precedent, Petitioners' Waivers are Enforceable" ignores and contradicts our express analysis in *Balde* (and the Supreme Court's guidance in *Bousley*). The panel's discussion wrongly suggests that a collateral-attack waiver in a plea agreement overrides the argument that the plea agreement itself was unknowing and involuntary because the description of the essential elements of the crime relied upon by the pleading defendant was rendered inaccurate by subsequent, clarifying caselaw. *Id.* at 124.

Moreover, the opinion's citation to other circuits that have reached the "same conclusion" is at odds with its actual narrow holding. *Id.* If the panel really *did* purport to embrace the same conclusion as the other circuits cited, its holding would be far broader than the narrow holding embodied in footnote 4, and would be squarely at odds with our decision in *Balde*. The decisions cited by the panel do not simply hold that an appeal or collateral-attack waiver bars a post-*Davis*

---

[5] In *Johnson v. United States*, the Supreme Court held that the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B), was unconstitutionally vague. *See* 576 U.S. 591, 597 (2015). *United States v. Davis*, discussed above at note 4, held that the similarly-worded residual clause in 18 U.S.C. § 924(c) was also unconstitutionally vague. *See* 588 U.S. at 470.

15

challenge to a § 924(c) conviction based on a predicate act that does not constitute a valid crime of violence in cases where the record establishes that an alternate predicate crime of violence can support a § 924(c) conviction.[6] They hold, contrary to *Balde*, that a *Davis* challenge to a § 924(c) conviction based on a predicate invalidated by *Johnson* and *Davis* is barred by an appeal or collateral-attack waiver. *See King v. United States*, 41 F.4th 1363, 1368 (11th Cir. 2022); *Portis v. United States*, 33 F.4th 331, 336 (6th Cir. 2022); *United States v. Goodall*, 21 F.4th 555, 562 (9th Cir. 2021); *Oliver v. United States*, 951 F.3d 841, 848 (7th Cir. 2020).

If the opinion did, in fact, reach the same conclusion as these circuits, then we would find ourselves on both sides of a circuit split. *See Balde*, 943 F.3d at 95; *United States v. McKinney*, 60 F.4th 188, 191–93 (4th Cir. 2023) (declining to enforce petitioner's appeal waiver where he showed his § 924(c) conviction rested on an invalid predicate, he made "a cognizable claim of actual innocence," and barring the challenge would be a miscarriage of justice (citation omitted)).

Even an attentive reader who scours footnotes could be left with the misimpression that the *Cook* opinion holds generally that challenges to § 924(c)

---

[6] Like the panel here, the court in *Oliver v. United States* did conclude, among other things, that enforcing collateral-attack waivers to bar the defendants' post-conviction challenges to their § 924(c) convictions would not constitute a miscarriage of justice where other conduct established by the record constituted a valid predicate for the § 924(c) conviction. *See* 951 F.3d 841, 847 (7th Cir. 2020).

convictions resting on invalid predicate acts are barred by appeal or collateral-attack waivers—a conclusion that would be squarely in conflict with our decision in *Balde*. The Panel Concurrence makes clear that the panel did not intend to so hold, *see above* at 9–10, 15–16, and that's a good thing. But the panel's precedential opinion still says what it says, and includes extensive analysis and rule statements that squarely conflict with binding law. For that reason, *en banc* review is necessary to "maintain uniformity of the court's decisions." Fed. R. App. P. 35(a)(1).[7]

### 3. Exceptional Importance

Finally, this case raises exceptionally important questions surrounding the limits of plea bargaining. As we all know, the vast majority of federal criminal cases are resolved through plea bargaining. Recent statistics show that about 97% of all federal cases end in guilty pleas.[8] As a result, plea bargaining has morphed into more than just "some adjunct to the criminal justice system; it *is* the criminal

---

[7] As noted above, I do not argue that the panel should have rewritten the parties' arguments, or granted them relief they did not seek. *See above*, Panel Concurrence, at 7. Whether the defendants may have faced insurmountable challenges even if they had argued that their pleas were involuntary is beside the point. *See id.* at 11–15. And I do not seek an "answer" in this case to any particular question. *See above*, Lohier, *J.*, concurring in denial of rehearing *en banc*, at 3. I do argue that the panel should conform its analysis to its actual holding and eliminate unnecessary assertions of law that conflict with binding precedent.

[8] U.S. Sent'g Comm'n, *2023 Sourcebook of Federal Sentencing Statistics*, 32 (2023), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2023/2023_Sourcebook.pdf [https://perma.cc/L8CZ-EHXL].

justice system." *Missouri v. Frye*, 566 U.S. 134, 144 (2012) (quoting Robert E. Scott & William J. Stuntz, *Plea Bargaining as Contract*, 101 Yale L.J. 1909, 1912 (1992) (emphasis in original)).

Plea agreements necessarily require defendants to waive a host of critical constitutional rights, including the right to remain silent and put the government to its proof, the right to trial by jury, and the right to confront witnesses. Appeal waivers up the ante. They purport to sever a crucial check on what is now the heart of the criminal justice system—plea agreements—by preventing courts from reviewing unlawful convictions secured by a guilty plea.

And such waivers have become the norm. A 2005 study shows that 76% of plea agreements in this Circuit contained appeal waivers. *See* Nancy J. King & Michael E. O'Neill, *Appeal Waivers and the Future of Sentencing Policy*, 55 Duke L.J. 209, 232 (2005) (empirical study sampling 971 randomly selected federal cases with written plea agreements in fiscal year 2003). There is no reason to think these numbers would be lower today. I suspect they may be higher.

For that reason, it's not surprising that unconstrained appeal waivers face mounting criticism within the legal community. *See, e.g.*, Thea Johnson, *2023 Plea Bargain Task Force Report*, American Bar Association, 25 (2023), https://www.americanbar.org/content/dam/aba/publications/criminaljustice/plea

-bargain-tf-report.pdf [https://perma.cc/VJ5W-VSQH] (noting that appeal and collateral-attack waivers "have nothing to do with trial . . . and can and do lead to injustices," and concluding that such waivers should be presumptively disfavored and never allowed with respect to certain fundamental rights).[9]

This Court has recognized the value of plea agreements, as well as their limitations. Though we invoke general contract principles in interpreting and applying plea agreements, we have acknowledged that "plea agreements are not ordinary contracts," *Lajeunesse*, 85 F.4th at 692, so we "temper the application of ordinary contract principles with 'special due process concerns for fairness and the adequacy of procedural safeguards,'" *United States v. Granik*, 386 F.3d 404, 413 (2d Cir. 2004) (quoting *United States v. Altro*, 180 F.3d 372, 375 (2d Cir. 1999)). Moreover, we recognize that even within a traditional contract law framework, plea agreements "are subject to the public policy constraints that bear upon the

---

[9] In August 2023, the ABA House of Delegates formally adopted the principles included in the report. *See* Criminal Justice Section, Am. Bar Ass'n, Resolution 502 (Aug. 2023), https://www.americanbar.org/content/dam/aba/administrative/news/2023/am-res/502.pdf [https://perma.cc/2JL2-D7YM].

enforcement of other kinds of contracts." *United States v. Yemitan*, 70 F.3d 746, 748 (2d Cir. 1995).

Consistent with this history, we should be cautious about expanding the applicability of appeal waivers to circumstances previously beyond their reach— such as challenges to pleas entered without an understanding of the essential elements of a crime. The court's responsibility to ensure that people are not convicted of crimes they did not commit outweighs those individuals' freedom of contract. *Cf. North Carolina v. Alford*, 400 U.S. 25, 37–38 (1970) (requiring a court to assure itself that an adequate factual basis supported a guilty plea where the defendant maintained his innocence but chose to enter into a plea agreement). Simply put, consent and contract do not override innocence and guilt as the critical touchstones in our criminal justice system.

Though the specific question in this case involves appeal and collateral-attack waivers, it more broadly tests the limits of the contract-based model of criminal justice. In my view, our criminal justice system is more than just a marketplace in which the medium of exchange is an accused's liberty, and courts have a role to play beyond ensuring an efficient marketplace.

For the above reasons, I respectfully dissent from the Court's denial of rehearing *en banc*.